# EXHIBIT A

10-Q 1 duk-20150930x10q.htm FORM 10-Q

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

# FORM 10-Q

(Mark One)

☒     QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended September 30, 2015

OR

☐     TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

| Commission file number | Registrant, State of Incorporation or Organization, Address of Principal Executive Offices, and Telephone Number | IRS Employer Identification No. |
|---|---|---|



| 1-32853 | **DUKE ENERGY CORPORATION** (a Delaware corporation) 550 South Tryon Street Charlotte, North Carolina 28202-1803 704-382-3853 | 20-2777218 |
|---|---|---|

| Commission file number | Registrant, State of Incorporation or Organization, Address of Principal Executive Offices, Telephone Number and IRS Employer Identification Number | Commission file number | Registrant, State of Incorporation or Organization, Address of Principal Executive Offices, Telephone Number and IRS Employer Identification Number |
|---|---|---|---|
| 1-4928 | **DUKE ENERGY CAROLINAS, LLC** (a North Carolina limited liability company) 526 South Church Street Charlotte, North Carolina 28202-1803 704-382-3853 56-0205520 | 1-3274 | **DUKE ENERGY FLORIDA, LLC** (formerly DUKE ENERGY FLORIDA, INC.) (a Florida limited liability company) 299 First Avenue North St. Petersburg, Florida 33701 704-382-3853 59-0247770 |
| 1-15929 | **PROGRESS ENERGY, INC.** (a North Carolina corporation) 410 South Wilmington Street Raleigh, North Carolina 27601-1748 704-382-3853 56-2155481 | 1-1232 | **DUKE ENERGY OHIO, INC.** (an Ohio corporation) 139 East Fourth Street Cincinnati, Ohio 45202 704-382-3853 31-0240030 |
| 1-3382 | **DUKE ENERGY PROGRESS, LLC** (formerly DUKE ENERGY PROGRESS, INC.) (a North Carolina limited liability company) 410 South Wilmington Street Raleigh, North Carolina 27601-1748 704-382-3853 56-0165465 | 1-3543 | **DUKE ENERGY INDIANA, INC.** (an Indiana corporation) 1000 East Main Street Plainfield, Indiana 46168 704-382-3853 35-0594457 |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

| | | | | |
|---|---|---|---|---|
| Duke Energy Corporation (Duke Energy) | Yes ☒ No ☐ | Duke Energy Florida, LLC (Duke Energy Florida) | Yes ☒ No ☐ |
| Duke Energy Carolinas, LLC (Duke Energy Carolinas) | Yes ☒ No ☐ | Duke Energy Ohio, Inc. (Duke Energy Ohio) | Yes ☒ No ☐ |
| Progress Energy, Inc. (Progress Energy) | Yes ☒ No ☐ | Duke Energy Indiana, Inc. (Duke Energy Indiana) | Yes ☒ No ☐ |
| Duke Energy Progress, LLC (Duke Energy Progress) | Yes ☒ No ☐ | | |

DUKE ENERGY CORPORATION – DUKE ENERGY CAROLINAS, LLC – PROGRESS ENERGY, INC. –
DUKE ENERGY PROGRESS, LLC – DUKE ENERGY FLORIDA, LLC – DUKE ENERGY OHIO, INC. – DUKE ENERGY INDIANA, INC.
Combined Notes to Condensed Consolidated Financial Statements – (Continued)
(Unaudited)

### North Carolina and South Carolina Ash Basins

On February 2, 2014, a break in a stormwater pipe beneath an ash basin at Duke Energy Carolinas' retired Dan River Steam Station caused a release of ash basin water and ash into the Dan River. On February 8, 2014, a permanent plug was installed in the stormwater pipe, stopping the release of materials into the river. Duke Energy Carolinas estimates 30,000 to 39,000 tons of ash and 24 million to 27 million gallons of basin water were released into the river. In July 2014, Duke Energy completed remediation work identified by the EPA and continues to cooperate with the EPA's civil enforcement process. Total repairs and remediation expenses incurred by Duke Energy Carolinas related to the release were approximately $24 million. No additional expenses were recorded in 2015. Duke Energy Carolinas will not seek recovery of these costs from ratepayers. See the "Litigation" section below for additional information on litigation, investigations and enforcement actions related to ash basins, including the Memorandum of Plea Agreement (Plea Agreements) in connection with the North Carolina Ash Basin Grand Jury Investigation. Other costs related to the Dan River release, including pending or future state or federal civil enforcement proceedings, future regulatory directives, natural resources damages, additional pending litigation, future claims or litigation and long-term environmental impact costs, cannot be reasonably estimated at this time.

On September 20, 2014, the Coal Ash Act became law and was amended on June 24, 2015, by the Mountain Energy Act. The Coal Ash Act, as amended, (i) establishes a Coal Ash Management Commission (Coal Ash Commission) to oversee handling of coal ash within the state; (ii) prohibits construction of new and expansion of existing ash impoundments and use of existing impoundments at retired facilities; (iii) requires closure of ash impoundments at Duke Energy Progress' Asheville and Sutton plants and Duke Energy Carolinas' Riverbend and Dan River stations no later than August 1, 2019 (the Mountain Energy Act provides for the potential extension of closure of the Asheville impoundment until 2022); (iv) requires dry disposal of fly ash at active plants, excluding the Asheville Plant, and retired by December 31, 2018; (v) requires dry disposal of bottom ash at active plants, excluding the Asheville Plant, by December 31, 2019, or retirement of active plants; (vi) requires all remaining ash impoundments in North Carolina to be categorized as high-risk, intermediate-risk or low-risk no later than December 31, 2015 by the North Carolina Department of Environmental Quality (NCDEQ), formerly the North Carolina Department of Environment and Natural Resources, with the method of closure and timing to be based upon the assigned risk, with closure no later than December 31, 2029; (vii) establishes requirements to deal with groundwater and surface water impacts from impoundments; and (viii) increases the level of regulation for structural fills utilizing coal ash. The Coal Ash Act includes a variance procedure for compliance deadlines and modification of requirements regarding structural fills and compliance boundaries. Provisions of the Coal Ash Act prohibit cost recovery in customer rates for unlawful discharge of ash basin waters occurring after January 1, 2014. The Coal Ash Act leaves the decision on cost recovery determinations related to closure of coal combustion residual (CCR) surface impoundments (ash basins or impoundments) to the normal ratemaking processes before utility regulatory commissions. Duke Energy has and will periodically submit to NCDEQ site-specific coal ash impoundment closure plans or excavation plans in advance of closure plans. These plans and all associated permits must be approved by NCDEQ before any excavation or closure work can begin.

In September 2014, Duke Energy Carolinas executed a consent agreement with the South Carolina Department of Health and Environmental Control (SCDHEC) requiring the excavation of an inactive ash basin and ash fill area at the W.S. Lee Steam Station. As part of this agreement, in December 2014, Duke Energy Carolinas filed an ash removal plan and schedule with SCDHEC. In April 2015, the federal CCR rules were published and Duke Energy Carolinas subsequently executed an agreement with the conservation groups Upstate Forever and Save Our Saluda that requires Duke Energy Carolinas to remediate all active and inactive ash storage areas at the W.S. Lee Steam Station. Coal-fired generation at W.S. Lee ceased in 2014 and unit 3 was converted to natural gas in March 2015. In July 2015, Duke Energy Progress executed a consent agreement with the SCDHEC requiring the excavation of an inactive ash fill area at the Robinson Plant within eight years. The Robinson Plant and W.S. Lee Station sites are required to be closed pursuant to the recently issued CCR rule and the provisions of these consent agreements are consistent with the federal CCR closure requirements.

Asset retirement obligations recorded on the Duke Energy Carolinas and Duke Energy Progress Condensed Consolidated Balance Sheets at September 30, 2015 and December 31, 2014 include the legal obligation for closure of coal ash basins and the disposal of related ash as a result of the Coal Ash Act, the EPA's CCR rule and other agreements. Cost recovery for future expenditures will be pursued through the normal ratemaking process with federal and state utility commissions, which permit recovery of necessary and prudently incurred costs associated with Duke Energy's regulated operations. See Note 7 for additional information.

### Coal Combustion Residuals

On April 17, 2015, the EPA published in the Federal Register a rule to regulate the disposal of CCR from electric utilities as solid waste. The federal regulation classifies CCR as nonhazardous waste under Subtitle D of the Resource Conservation and Recovery Act and allows beneficial use of CCRs with some restrictions. The regulation applies to all new and existing landfills, new and existing surface impoundments receiving CCR and existing surface impoundments that are no longer receiving CCR but contain liquid located at stations currently generating electricity (regardless of fuel source). The rule establishes requirements regarding landfill design, structural integrity design and assessment criteria for surface impoundments, groundwater monitoring and protection procedures and other operational and reporting procedures to ensure the safe disposal and management of CCR. In addition to the requirements of the federal CCR regulation, CCR landfills and surface impoundments will continue to be independently regulated by most states. Duke Energy records an asset retirement obligation when it has a legal obligation to incur retirement costs associated with the retirement of a long-lived asset and the obligation can be reasonably estimated.

Duke Energy Carolinas, Progress Energy, Duke Energy Progress, Duke Energy Ohio and Duke Energy Indiana recorded additional asset retirement obligation amounts in the second quarter of 2015 as a result of the EPA's CCR rule. Cost recovery for future expenditures will be pursued through the normal ratemaking process with federal and state utility commissions, which permit recovery of necessary and prudently incurred costs associated with Duke Energy's regulated operations. See Note 7 for additional information.

50

# EXHIBIT B

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 8-K

### CURRENT REPORT
### Pursuant to Section 13 or 15(d) of the
### Securities Exchange Act of 1934

---

Date of Report (Date of earliest event reported):  **November 8, 2010**

# DUKE ENERGY CORPORATION
(Exact Name of Registrant as Specified in its Charter)

| **Delaware** | **001-32853** | **20-2777218** |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**526 South Church Street, Charlotte, North Carolina  28202**
(Address of Principal Executive Offices, including Zip code)

**(704) 594-6200**
(Registrant's telephone number, including area code)

# DUKE ENERGY INDIANA, INC.
(Exact Name of Registrant as Specified in its Charter)

| **Indiana** | **1-3543** | **35-0594457** |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**1000 East Main Street, Plainfield, Indiana 46168**
(Address of Principal Executive Offices, including Zip code)

**(704) 594-6200**
(Registrant's telephone number, including area code)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240. 13e-4(c))

**Item 7.01.  Regulation FD Disclosure.**

On November 8, 2010, Duke Energy (the "Company") announced the termination of employment of Scott R. Storms, an attorney of the Company and formerly with the Indiana Utility Regulatory Commission, and Michael W. Reed, President of Duke Energy Indiana ("DE Indiana").  Both of these individuals were placed on administrative leave on October 5, 2010 while the Company conducts an investigation related to the recent hiring of Mr. Storms.

The Company also announced the appointment, effective November 8, 2010, of Douglas F. Esamann as President of DE Indiana.  Mr. Esamann had been interim President of DE Indiana since October 11, 2010.

An internal employee memo related to these matters is attached as Exhibit 99.1 to this filing.

**Item 9.01.  Financial Statements and Exhibits.**

   *(d)*  *Exhibits.*

   99.1  Memo to Duke Energy Employees and Internal Contractors from Jennifer L. Weber, Senior Vice President and Chief Human Resources Officer, dated November 8, 2010.

2

**SIGNATURE**

      Pursuant to the requirements of the Securities and Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**DUKE ENERGY CORPORATION**

Date: November 8, 2010

By:    /s/ Marc E. Manly
Name:  Marc E. Manly
Title:    Group Executive, Chief Legal Officer and Corporate Secretary

**DUKE ENERGY INDIANA, INC.**

Date: November 8, 2010

By:    /s/ Marc E. Manly
Name:  Marc E. Manly
Title:    Group Executive and Chief Legal Officer

3

## EXHIBIT INDEX

| Exhibit | Description |
| --- | --- |
| 99.1 | Memo to Duke Energy Employees and Internal Contractors from Jennifer L. Weber, Senior Vice President and Chief Human Resources Officer, dated November 8, 2010. |

**EXHIBIT 99.1**

TO:           Duke Energy Employees and Contractors

FROM:         Jennifer L. Weber, Senior Vice President and Chief Human Resources Officer

SUBJECT:      Update on Indiana Matter and Naming of Esamann as Duke Energy Indiana President

We're committed to keeping you up-to-date on issues involving our company, including Duke Energy's recent hiring of Scott Storms and subsequent placement of Mr. Storms and Mike Reed, president of Duke Energy Indiana, on administrative leave. Please know that we do not typically share this type of personnel information with others. But, given the visibility of this matter, we are communicating the steps we are taking based on our findings to date.

As we have reported earlier, Duke Energy promptly initiated internal and independent reviews of the issues raised in Indiana. On Nov. 4, we received a report from Gibson, Dunn & Crutcher, the law firm conducting the independent investigation, based on its review of the events leading up to the hiring of Scott Storms during the period of March to September 2010. After careful consideration of the findings to date from these investigations, we are taking the following actions:

•       Today Duke Energy terminated the employment of Scott Storms and Mike Reed.

•       We are implementing specific guidelines related to the hiring for certain job openings. Our new protocols will go above and beyond standard requirements. They will ensure that job candidates linked to regulatory and oversight groups are removed from all Duke Energy affairs prior to being considered for opportunities. We plan to communicate and train all hiring managers on these enhanced requirements.

•       Doug Esamann has been named president of Duke Energy Indiana. He had been serving as interim president since Oct. 11. The press release announcing Doug's appointment is attached.

We will continue to cooperate with the Indiana Inspector General and the Indiana Utility Regulatory Commission as they complete their reviews of this matter. Because of these external reviews, our own internal investigation is ongoing.

Please join me in congratulating Doug on his appointment and thanking him for his strong interim and enduring leadership in Indiana.

# EXHIBIT C

# Duke Energy Responds to Hiring Issues; CEO Says Company Will Take Whatever Actions are Appropriate

   



Duke Energy logo. (PRNewsFoto/Duke Energy)

  

PLAINFIELD, Ind., Oct. 12 /PRNewswire/ -- Duke Energy is reviewing e-mails between certain company employees and individuals at the Indiana Utility Regulatory Commission (IURC) that have come to light as part of a public records request.

(Logo:  http://photos.prnewswire.com/prnh/20040414/DUKEENERGYLOGO
(http://photos.prnewswire.com/prnh/20040414/DUKEENERGYLOGO) )

(Logo:  http://www.newscom.com/cgi-bin/prnh/20040414/DUKEENERGYLOGO (http://www.newscom.com/cgi-bin/prnh/20040414/DUKEENERGYLOGO) )

"Many of these e-mails are very concerning to Duke Energy, and they will be considered as part of a larger, more comprehensive review," said Jim Rogers, Duke Energy chairman, president and chief executive officer. "This has my full attention and that of our management team. We regret that hiring an attorney from the IURC has raised questions about the manner in which we conduct our business. We will investigate this thoroughly and will take whatever actions are appropriate."

Duke Energy has hired a nationally recognized law firm – Gibson Dunn and Crutcher – to conduct an independent investigation into the company's actions related to these matters. Its work is already under way.

Duke Energy also intends to fully cooperate with the Indiana Inspector General's investigation. If either the Inspector General's investigation or the company's review of these issues finds any behavior that is inconsistent with high ethical standards, Duke Energy will take appropriate steps to deal with those issues immediately.

On Oct. 5, Duke Energy placed attorney Scott Storms and Mike Reed, president of Duke Energy Indiana, on administrative leave during these investigations.

**Duke Energy Appoints Esamann as Interim Indiana President**

Duke Energy today also announced that it has appointed Doug Esamann interim president of its Indiana service region.

Esamann – currently senior vice president of corporate strategy and planning at Duke Energy's corporate headquarters in Charlotte, N.C. – will oversee the company's regulatory, governmental relations, economic development and community affairs work in Indiana while the investigation continues.

Esamann joined Public Service Indiana (later called PSI Energy, a predecessor company to Duke Energy), in 1979. From 2001 to 2004, he served as president of PSI Energy. Esamann is a Plainfield, Ind., native and a graduate of Indiana University in Bloomington.

"Doug will provide us with strong, stable leadership in Indiana as we work through these issues," Rogers said.

Duke Energy Indiana's operations provide approximately 6,800 megawatts of electricity capacity to approximately 780,000 customers, making it the state's largest electric supplier.

Duke Energy is one of the largest electric power holding companies in the United States. Its regulated utility operations serve approximately 4 million customers located in five states in the Southeast and Midwest, representing a population of approximately 11 million people. Its commercial power and international business segments own and operate diverse power generation assets in North America and Latin America, including a growing portfolio of renewable energy assets in the United States.

Headquartered in Charlotte, N.C., Duke Energy is a Fortune 500 company traded on the New York Stock Exchange under the symbol DUK. More information about the company is available on the Internet at: www.duke-energy.com (http://www.duke-energy.com/).

| MEDIA CONTACT: | Angeline Protogere |
| --- | --- |
| | Office:  317-838-1338 |

|  |  |
|---|---|
|  | 24-Hour Phone: 800-559-3853 |
| ANALYST CONTACTS: | Bill Currens |
|  | 704-382-1603 |
|  | Stephen De May |
|  | 704-382-2620 |

SOURCE Duke Energy

RELATED LINKS
http://www.duke-energy.com (http://www.duke-energy.com)

**EXHIBIT D**



### SUPREME COURT
#### OF THE UNITED STATES

**Visiting the Court | Touring the Building | Exhibitions**

Search:  ● All Documents ○ Docket          **Advanced Search**

Enter Search Text: [            ]          [ Search ]  [ Help ]

## Home | Search Results

No. 05-848
Title:          Environmental Defense, et al., Petitioners
                v.
                Duke Energy Corporation, et al.
Docketed:       January 5, 2006
Linked with 05A441
Lower Ct:       United States Court of Appeals for the Fourth Circuit
  Case Nos.:    (04-1763)
  Decision Date: June 15, 2005
  Rehearing Denied: August 30, 2005
**Questions**
**Presented**

~~~Date~~~  ~~~~~~~Proceedings  and  Orders~~~~~~~~~~~~~~~~~~~~~~

Nov 15 2005  Application (05A441) to extend the time to file a petition for a writ of certiorari from
             November 28, 2005 to January 12, 2006, submitted to The Chief Justice.

Nov 17 2005  Response to application from respondent Duke Energy Corporation filed.

Nov 17 2005  Application (05A441) granted by The Chief Justice extending the time to file until
             December 28, 2005.

Dec 28 2005  Petition for a writ of certiorari filed. (Response due February 6, 2006)

Jan 31 2006  Order extending time to file response to petition to and including March 8, 2006, for all

| | respondents. |
|---|---|
| Mar 7 2006 | Brief amici curiae of New York, et al. filed. |
| Mar 8 2006 | Brief of respondent United States in opposition filed. |
| Mar 8 2006 | Brief of respondent Duke Energy Corporation in opposition filed. |
| Mar 8 2006 | Brief amici curiae of National Parks Conservation Association, et al. filed. |
| Mar 21 2006 | Reply of petitioners Environmental Defense, et al. filed. (Distributed) |
| Mar 22 2006 | DISTRIBUTED for Conference of April 14, 2006. |
| Apr 17 2006 | DISTRIBUTED for Conference of April 21, 2006. |
| Apr 24 2006 | DISTRIBUTED for Conference of April 28, 2006. |
| May 8 2006 | DISTRIBUTED for Conference of May 11, 2006. |
| May 15 2006 | Petition GRANTED. |
| May 22 2006 | Extension of time within which to file the joint appendix and petitioners' brief on the merits to and including July 21, 2006. |
| Jun 5 2006 | Consent for the filing of amicus briefs in support of either/neither party received from counsel for the respondent. |
| Jun 5 2006 | Extension of time within which to file the respondent's brief on the merits to and including September 15, 2006. |
| Jul 5 2006 | Consent to the filing of amicus briefs in support of either party received from counsel for the petitioners. |
| Jul 21 2006 | Brief amici curiae of Chesapeake Bay Foundation and Adirondack Mountain Club filed. |
| Jul 21 2006 | Brief amici curiae of STAPPA and ALAPCO |
| Jul 21 2006 | Brief amici curiae of New Jersey, et al. filed. |
| Jul 21 2006 | Brief of respondent United States in support filed. |
| Jul 21 2006 | Joint appendix filed. (Joint appendix in two volumes). |
| Jul 21 2006 | Brief of petitioners Environmental Defense, et al. filed. |
| Jul 21 2006 | Brief amici curiae of Law Professors John E. Bonine, et al. filed. |
| Jul 21 2006 | Brief amici curiae of New York, et al. filed. |
| Jul 21 2006 | Brief amici curiae of American Lung Association, et al. filed. |
| Jul 21 2006 | Brief amici curiae of National Parks Conservation Association, et al. filed. |
| Jul 21 2006 | Brief amici curiae of Former EPA Administrators Carol M.Browner and Russell E. Train filed. |
| Jul 21 2006 | Brief amici curiae of Current and Former Members of Congress Henry Waxman, et al. filed. |
| Aug 14 2006 | SET FOR ARGUMENT on Wednesday, November 1, 2006. |
| Aug 14 2006 | CIRCULATED. |
| Sep 15 2006 | Brief amicus curiae of Manufacturers Association Work Group filed. (Distributed) |

Sep 15 2006   Motion of Alabama, et al. for leave to participate in oral argument as amici curiae and for divided argument filed.

Sep 15 2006   Brief of respondent Duke Energy Corporation filed. (Distributed)

Sep 15 2006   Brief amici curiae of Alabama, et al. filed. (Distributed)

Sep 15 2006   Brief amicus curiae of Electric Utility Industry filed. (Distributed)

Sep 15 2006   Brief amicus curiae of APA Watch filed. (Distributed)

Sep 15 2006   Brief amicus curiae of National Environmental Development Association filed. (Distributed)

Sep 15 2006   Brief amicus curiae of Walter C. Barber filed. (Distributed)

Sep 15 2006   Brief amicus curiae of U.S. Representative Joe L Barton filed. (Distributed)

Sep 15 2006   Brief amici curiae of International Brotherhood of Boilermakers, et al. filed. (Distributed)

Sep 15 2006   Brief amici curiae of American Public Power Association and National Rural Electric Cooperative Association filed. (Distributed)

Sep 15 2006   Brief amicus curiae of Washington Legal Foundation filed. (Distributed)

Sep 15 2006   Brief amici curiae of Law Professors filed. (Distributed)

Sep 18 2006   Motion for divided argument filed by the Solicitor General.

Sep 18 2006   Petitioners' response to motion of Alabama, et al. for leave to participate in oral argument as amici curiae and for divided argument filed.

Sep 22 2006   DISTRIBUTED for Conference of September 25, 2006.

Sep 28 2006   Record received from U.S.C.A. for 4th Circuit. (1 box)

Oct 2 2006   Motion of Alabama, et al. for leave to participate in oral argument as amicus curiae and for divided argument DENIED.

Oct 2 2006   Motion for divided argument filed by the Solicitor General GRANTED.

Oct 10 2006   Record received from U.S.D.C. for Middle District of North Carolina (Greensboro) (6 boxes)

Oct 19 2006   Reply of petitioners Environmental Defense, et al. filed. (Distributed).

Oct 20 2006   Reply of United States as respondent supporting peittioners filed. (Distributed).

Oct 27 2006   Petitioner's proposed lodging approved and filed (20 copies each of the brief of Industry Petitioners, settlement agreement, and certified CA-4 transcript). DISTRIBUTED.

Nov 1 2006   Argued. For petitioners: Sean H. Donahue, Washington, D.C. For respondent United States in support of petitioners: Thomas G. Hungar, Deputy Solicitor General, Department of Justice, Washington, D.C. For respondent Duke Energy Corporation: Carter G. Phillips, Washington, D.C.

Apr 2 2007   Judgment VACATED and case REMANDED. Souter, J., delivered the opinion of the Court, in which Roberts, C. J., and Stevens, Scalia, Kennedy, Ginsburg, Breyer, and Alito, JJ., joined, and in which Thomas, J., joined as to all but Part III-A. Thomas, J. filed an opinion concurring in part.

May 4 2007   JUDGMENT ISSUED.

Jun 13 2007   Record returned to U.S.D.C. for the Middle District of North Carolina.

Oct 30 2007   Record returned to U.S.C.A. for the 4th Circuit.


| ~~Name~~~~~~~~~~~~~~~~~~~~~ | ~~~~~~~Address~~~~~~~~~~~~~~~~~~~ | ~~Phone~~~ |
|---|---|---|
| **Attorneys for Petitioners:** | | |
| Sean H. Donahue | Donahue & Goldberg, LLP | (202) 277-7085 |
|   Counsel of Record | 2000 L Street, N.W., Suite 808 | |
| | Washington, DC  20036 | |
| | sean@donahuegoldberg.com | |
| Party name: Environmental Defense, et al. | | |
| **Attorneys for Respondents:** | | |
| F. William Brownell | Hunton & Williams LLP | (202) 955-1500 |
|   Counsel of Record | 2200 Pennsylvania Avenue, NW | |
| | Washington, DC  20037 | |
| | bbrownell@hunton.com | |
| Party name: Duke Energy Corporation | | |
| | | |
| Paul D. Clement | Solicitor General | (202) 514-2217 |
|   Counsel of Record | United States Department of Justice | |
| | 950 Pennsylvania Ave., N.W. | |
| | Washington, DC  20530-0001 | |
| | SupremeCtBriefs@USDOJ.gov | |
| | | |
| Carter G. Phillips | Sidley Austin LLP | (202) 736-8270 |
|   Counsel of Record | 1501 K Street, N.W. | |
| | Washington, DC  20005 | |
| | cphillips@sidley.com | |
| Party name: Duke Energy Corporation | | |
| | | |
| Thomas G. Hungar | Gibson, Dunn & Crutcher LLP | (202) 955-8500 |
| | 1050 Connecticut Ave, N.W. | |
| | Washington, DC  20036 | |

thungar@gibsondunn.com

Party name: Duke Energy Corporation et al.

**Other:**

| | | |
|---|---|---|
| Kevin Peter Auerbacher | Deputy Attorney General<br>25 Market Street<br>PO Box 093<br>Trenton, NJ  08625-0093 | (609) 292-6945 |

Party name: New Jersey, et al.

| | | |
|---|---|---|
| Richard E Ayres | Ayres Law Group<br>1615 L Street, NW<br>Suite 1350<br>Washington, DC  20036 | (202) 452-9200 |

Party name: State and Territorial Air Pollution Program Administrators and Association of Local Air Pollution Control Officials

| | | |
|---|---|---|
| Hope M. Babcock | Institute for Public Representation<br>Georgetown University Law Center<br>600 New Jersey Avenue, NW<br>Suite 312<br>Washington, DC  20001<br>babcock@law.georgetown.edu | (202) 662-9535 |

Party name: American Lung Association, et al.

| | | |
|---|---|---|
| Robert L. Brubaker | Porter wright Morris & Arthur LLP<br>41 S. High Street<br>Ste. 3000<br>Columbus, OH  43215 | (614) 227-2000 |

Party name: Walter C. Barber

| | | |
|---|---|---|
| P. Stephen Gidiere III. | Balch & Bingham<br><br>1901 Sixth Avenue North<br>Suite 2600<br>Birmingham, AL  35203 | (205) 251-8100 |

Party name: Electric Utility Industry

| | | |
|---|---|---|
| Jared A. Goldstein | Roger Williams University<br>School of Law | (401)-254-4594 |

Bristol, RI  02809

Party name: Law Professors John E. Bonine, et al.


Michael D. Goodstein                    Resolution Law Group PC                    (202) 686-4844
                                        5335 Wisconsin Ave., NW
                                        Suite 305
                                        Washington, DC  20015

Party name: Chesapeake Bay Foundation and Adirondack Mountain Club


Holly D. Gordon                         Stanford Law School Environmental Law clinic   (650) 725-8571
                                        Crown Quadrangle
                                        559 Nathan Abbott Way
                                        Stanford, CA  94305-8610

Party name: Former EPA Administrators Carol M.Browner and Russell E. Train


Caitlin Joan Halligan                   Office of the Attorney General             (212) 416-8069
                                        120 Broadway, 25th Floor
                                        New York, NY  10271

Party name: New York, et al.


George E. Hays                          236 West Portal Avenue                     (415)-566-5414
                                        #110
                                        San Francisco, CA  94127

Party name: National Parks Conservation Association, et al.


Lorane F. Hebert                        Hogan Lovells US LLP
                                                                                   (202) 637-6536
                                        555 Thirteenth Street, N.W.
                                        Washington, DC  20004
                                        lorane.hebert@hoganlovells.com

Party name: National Environmental Development Association's Clean Air Project


Janet Pitterle Holt                     738 West Glebe Road                        (703) 684-6102
                                        Alexandria, VA  22305
                                        jpholt@msn.com

Party name: American Public Power Association and National Rural Electric Cooperative Association


Lawrence J. Joseph                      1250 Connecticut Ave., NW                  (202) 355-9452

Suite 200
Washington, DC  20036
lj@larryjoseph.com

Party name: APA Watch

Paul D. Kamenar                    1629 K Street, NW                    (202) 603-5397
                                   Suite 300
                                   Washington, DC  20006
                                   paul.kamenar@gmail.com

Party name: Washington Legal Foundation

Charles H. Knauss                  Bingham McCutchen LLP                (202) 373-6000
                                   2020 K Street, N.W.
                                   Washington, DC  20006-1806

Party name: Manufacturers Aassociation Work Group

George C. Landrith                 Frontiers of Freedom                 (703) 246-0110
                                   P.O. Box 69
                                   Oakton, VA  22124

Party name: U.S. Representative Joe L Barton

Kevin C. Newsom                    Solicitor General                   (334) 242-7401
                                   Office of Attorney General
                                   11 South Union Street
                                   Montgomery, AL  36130

Party name: Alabama, et al.

David B. Rivkin Jr.                Baker & Hostetler LLP                (202) 861-1731
                                   1050 Connecticut Avenue, NW
                                   Washington, DC  20036
                                   drivkin@bakerlaw.com

Party name: Law Professors

Scott H. Segal                     Bracewell & Giuliani                 (202)-828-5845
                                   2000 K Street, NW
                                   Suite 500
                                   Washington, DC  20006

Party name: International Brotherhood of Boilermakers, et al.

Stephanie Tai                    University of Wisconsin Law School          (608) 890-1236
                                 975 Bascom Mall
                                 Madison, WI  53706
                                 tai2@wisc.edu
Party name: Current and Former Members of Congress Henry Waxman, et al.

January 20, 2016 | Version 2014.1

**Home | Help | Site Map | Contact Us | About Us | FAQ | Jobs | Links | Building Regulations**
**Website Policies and Notices | Privacy Policy | USA.GOV**

# Supreme Court of the United States

# EXHIBIT E

## Representative Transactions

▸ Represented the bidder or target in five high-profile takeover contests, including Coeur d'Alene Corporation in its hostile cross-border tender offer for Canadian mining company Wheaton River Minerals Ltd.; Atlantic Coast Airlines Holdings, Inc.'s successful effort to fend off a hostile takeover attempt by Mesa Air Group; PeopleSoft, Inc. in connection with a hostile tender offer by Oracle Corporation; Maxwell Shoe Company, Inc. in connection with its defense of an unsolicited offer by and subsequent merger with Jones Apparel Group; and ArvinMeritor in its attempted takeover of Dana Corporation.

▸ Represented PanAmSat Corporation, one of the largest geostationary satellite companies, in its auction sale to Kohlberg, Kravis & Roberts for approximately $3 billion.

▸ Represented General Electric Capital Corp. in its acquisition of assets from Boeing Capital valued at $2 billion.

▸ Represented Atmos Energy Corp. in its $1.9 billion acquisition of TXU Gas creating the country's largest pure-play natural gas utility.

▸ Represented the Special Committee of the Board of Directors of Hollywood Entertainment Corporation in its acquisition by founder, Mark Wattles and Leonard Green & Partners for $1.3 billion.

▸ Represented Coast Casinos, Inc. in its sale to Boyd Gaming Corporation for $1.3 billion.

▸ Represented Lazard Freres & Co. as financial advisor to Omnicare, Inc. in its $1.5 billion unsolicited tender offer for NeighborCare, Inc. We also are representing Lazard Freres as financial advisor to Hollinger International Inc. in its sale by auction of The Telegraph Group to Press Holdings valued at $1.2 billion.

▸ Represented UBS Warburg as financial advisor to Comcast Corp. in the sale of Comcast's interest in QVC to Liberty Media Corporation valued at $7.9 billion.

▸ Represented Lehman Brothers as financial advisor to Cole National Corporation in acquisition by Luxottica Group SpA for $401 million.

▸ Represented Goldman, Sachs & Company as financial advisor to Target Corporation in its sale of Marshall Field's department store chain to May Department Stores Company for $3.2 billion

## Representative Cases

▸ Obtained a significant ERISA preemption victory for Aetna and CIGNA in the U.S. Supreme Court in *Aetna Health Inc v. Davila*. The Supreme Court unanimously ruled that participants and beneficiaries may not sue their employee health benefit plans—or the companies that administer those plans—under state law for matters relating to the plans' coverage decisions.

▸ Obtained a preliminary injunction against The Gator Corporation on behalf of the largest media organizations in the U.S., in the first case ever brought challenging the online practice of displaying unauthorized pop-up advertisements over another's website.

▸ Persuading the United States Supreme Court to vacate a $290 million punitive damage award, which had been the largest personal injury award ever affirmed on appeal in United States history. On remand the California Court of Appeal cut the award by over 90%.

▸ Obtained a dismissal on behalf of Textron and Textron-related defendants in one of the first decisions among the recent rash of cases challenging pension plan investment in an employer's securities, creating an important precedent with implications for companies nationwide.

▸ Obtained dismissal of two complaints against Tenet Healthcare Corporation and several present and former officers and directors in securities and derivative litigation.

▸ Obtained summary judgment on behalf of Ticketmaster dismissing antitrust claims brought by Tickets.com under Section 1 and 2 of the Sherman Act.

▸ Obtained settlement for less than copying costs on behalf of Aetna in two high profile managed care class actions brought on behalf of health plan members. Also obtained a significant victory for Aetna following a seven-week jury trial in a wrongful death suit of major significance to the HMO industry, in which no punitive damages were awarded to the plaintiff.

▸ Litigated to settlement for Beverly Enterprises, Inc. the largest unfair business practices case ever brought by the California State Attorney General's Office against a healthcare provider.

▸ In the first litigation victory for a casino in the State of New York, we represent Park Place Entertainment Corporation, one of the world's largest gaming companies, in connection with a constitutional challenge to New York State legislation concerning the legality of Indian casino gambling.

▸   Obtained the dismissal of a shareholder derivative action brought by Milberg Weiss against DHB Industries, Inc., the nation's largest manufacturer of bullet proof vests and other body armor.

▸   Obtained the dismissal of all claims asserted against Merrill Lynch & Co., Inc. and Morgan Stanley & Co. Inc. in connection with their role as co-lead underwriters in two Duke Energy Corp. public offerings.

▸   Persuaded the Supreme Court to declare the Florida Presidential Election Recount to be unconstitutional.  Acted as Lead Counsel to George W. Bush and Richard Cheney.

▸   Persuading the United States Court of Appeals for the Fourth Circuit to reverse a $262 million damage award – at the time, the third largest verdict ever against an auto manufacturer – against DaimlerChrysler Corp. in a product liability case alleging defect in door latch.

▸   Obtained jury verdict favoring University of Colorado Inventors of Vitamin Deficiency Test in Federal Court.  Represented Metabolite Laboratories, Inc. in *Metabolite Laboratories, Inc., and Competitive Technologies, Inc. v. Laboratory Corporation of America Holdings d/b/a/ Labcorp.*

▸   Obtained post-verdict victory for St. Jude Medical in a high-stakes patent infringement battle.   Represented St. Jude Medical in *Cardiac Pacemakers v. St. Jude Medical.*

GIBSON, DUNN & CRUTCHER LLP

**EXHIBIT F**

Login    Contact Us    Chat Now!

[                                        ] in [ All Content        ▼ ]   Search
                                                                    Advanced Search

Seminars & Webcasts    On-Demand    Interactive Learning Center    Publications    Patent Office Exam    The SEC Institute    Discover PLUS    Pro Bono

Faculty/Author Profile

Email    Share    Print

# Joel M. Cohen
Gibson, Dunn & Crutcher LLP

New York, NY, USA

BIOGRAPHY    ASSOCIATED ITEMS

**Joel M. Cohen**, a trial lawyer and former federal prosecutor, has led or participated in 24 civil and criminal trials in federal and state courts. He is equally comfortable leading confidential investigations, managing crises, or advocating in court proceedings. His experience includes all aspects of FCPA/anticorruption issues, insider trading, securities and financial institution litigation, class actions, sanctions, money laundering and asset recovery, with a particular focus on international disputes and discovery. While in government service, he was the prosecutor of the so-called "Wolf of Wall Street," was the first U.S. Legal Advisor to the French Ministry to Justice and was an advisor to the OECD in connection with its anti-corruption convention. Mr. Cohen has achieved significant victories pretrial and at trial in many high-profile matters, including:

• Winning a jury trial in the closely-watched *Securities and Exchange Commission v. Obus* insider trading matter on behalf of Wynnefield Capital and its chief portfolio manager after a twelve-year battle with the SEC.
• Obtaining summary judgment for Citi in a class action seeking more than $13 billion in damages for its alleged role in the Parmalat collapse.
• Winning a jury trial for AllianceBernstein in which the Florida state pension fund attempted to recover $3.2 billion in losses sustained in Enron and other stocks, and successfully defended the same client in other significant Enron-related litigations, one of which resulted in an award of attorney's fees and costs for his client.

His recent engagements include:

• Represented senior management and employees of a European bank in a large U.S. economic sanctions investigation.
• Acted as independent examiner for several Swiss banks in connection with the DOJ's "Tax Non-Prosecution Program."
• SEC v. Obus: Achieved trial victory and exoneration for Nelson Obus and Wynnefield Capital, a prominent hedge fund, in one of the longest fought insider trading cases in history.
• Abu Dabi Commercial Bank v. Moody's et al: Successfully defended Moody's in two matters concerning their ratings of structured investments.
• North Carolina Utilities Commission/Duke Energy: Represented Duke Energy legacy board of director members in connection with outstanding derivative and class action litigations and a resolved regulatory matter arising from the Duke-Progress corporate merger.
• Athale v. Sinotech: Successfully defended UBS, Citi and Lazard in a class action (and related SEC inquiry) alleging violation of federal securities laws in the underwriting of the $165 million IPO for SinoTech, a Chinese issuer delisted from NASDAQ following allegations that SinoTech was a shell company.
• SEC v. Allianz SE: Obtained a rare declination to prosecute from the Department of Justice and highly favorable SEC settlement on a cease-and-desist bases, in which both agencies were convinced not to proceed on an aggressive "private equity liability" theory relating to FCPA-related issues.
• Expro: Represented a major oil and gas service company, involving reviews in more than a dozen countries, on five continents, resulting in no charges brought anywhere globally.
• Represented several private equity and investment management funds in connection with SEC and Department of Justice FCPA-related investigations.
• United States v. Alliance One: Acted as monitor counsel for AllianceOne in connection with a three year DOJ and SEC FCPA-related monitorship.
• Represented several Fortune 100 companies in global regulatory investigations relating to corporate fraud, corruption/FCPA issues, sanctions issues, and insider trading concerns.
• Represented a major accounting firm, convincing the SEC not to bring charges for alleged violations of the auditor independence rules.
• Represented a Wall Street general counsel, convincing the SEC to decline to bring insider trading charges.
• SEC v. Stoker: Represented the former head of CDO trading at a top global bank in connection with several related criminal and regulatory and civil litigations in which no charges were brought against client.
• Represented multiple financial institutions in designing crisis management and global anticorruption programs.
• Represented many audit and special committees of public companies and private company boards of directors in connection with allegations of wrongdoing.
• Represented many tobacco and firearms producers in product liability actions.

Mr. Cohen is committed to *pro bono* work. He serves on the board of or acts as outside counsel to several prominent nonprofit entities, including New York Lawyers for the Public Interest, Lawyers Without Borders, and Jericho Project. He successfully led a team of Gibson Dunn attorneys in representing all plaintiffs in a high-profile immigration civil rights case (*Barrera v. Boughton*) in Connecticut federal court, which resulted in the largest

settlement in history for such claims, for which the Firm has been awarded the National Legal Aid & Defender Association's 2010 Beacon of Justice Award, and *The New York Times* noted the accomplishment in an editorial, and his team received the *National Law Journal's* Hot Pro Bono 2012 designation.

Mr. Cohen previously was Head of U.S. Litigation at Clifford Chance, where he practiced from 2004 to 2009. From 1999 to 2004, he practiced with Greenberg Traurig. From 1992 to 1999, he served as Assistant United States Attorney in the Eastern District of New York, supervising the Business/Securities Fraud Unit, where he received numerous awards from the Department of Justice and law enforcement agencies. Mr. Cohen was the prosecutor of Jordan Belfort and Stratton Oakmont, which is the focus of "The Wolf of Wall Street" film by Martin Scorsese. He was an adviser to OECD in connection with the effort to prohibit corruption in international transactions and was the first Department of Justice legal liaison advisor to the French Ministry of Justice. Mr. Cohen has published several articles on securities, international and white collar litigation issues and has been a presenter and chair at many professional conferences. He is also a frequent commentator in print and television media. Mr. Cohen has been named a leading white collar criminal defense attorney by *The Best Lawyers in America®*, a "Litigation Star" by *Benchmark Litigation*, a "Super Lawyer" in Criminal Litigation, and his work is noted by *Legal 500* in the areas of white collar criminal defense and securities litigation, and in *Chambers* in the white collar area. In addition, *The Am Law Litigation Daily* named Mr. Cohen as one of its Litigators of the Week after winning a jury defense verdict in an insider trading case on behalf of Nelson Obus, general partner of Wynnefield Capital.

Mr. Cohen received his bachelor's degree from Middlebury College, his master's degree in History from Duke University and his Juris Doctor from Duke University Law School, where he was a moot court champion. He is a member of the bars of New York and Massachusetts.

### Recent Speaking Engagements

- False Claims Act Conference, New York, May 2014
- Keynote Speaker, Offshore Alert Conference, Miami, May 2014
- Hedge Fund Compliance Master Class, New York, February 2014
- "The Wolf of Wall Street: Behind the Scenes of Stratton Oakmont," Heyman Center on Corporate Governance, January 2014
- Financial Institutions in the Crosshairs: The False Claims Act and FIRREA, October 2013
- Private Equity Operations & Compliance Forum, September 2013
- SEC & DOJ Hot Topics 2013 Breakfast Briefing, New York, December 2012
- PLI FCPA 2012 Conference, New York, May 2012
- ACI National Conference on FCPA, New York, April 2012
- PLI FCPA 2011 Conference, New York, May 2011
- ACI FCPA-Health Sciences Conference, New York, May 2010
- ACI Annual FCPA Conference, Washington, D.C., November 2008
- Legal IQ Annual Securities Litigation Conference, New York, May 2008
- "Ethics and Experts," 2007 Antitrust Law Section Symposium, New York State Bar Association

### Recent Publications

- Op-ed, "The Real Belfort Story Missing From 'Wolf' Movie," The New York Times, January 7, 2014.
- "Nepotism: Friendly Relations? When Nepotism May Violate the FCPA," The FCPA Report, October 17, 2012
- "Foreign Corrupt Practices Act," The US Private Real Estate Fund Compliance Guide, Private Equity International, June 1, 2012
- "Does That Settle It? Well, Maybe Not," National Law Journal, April 9, 2012
- "Private Equity Investment and the FCPA," *Review of Securities and Commodities Regulations*, Fall 2011
- "Insider Trading: It's Not for Suits," *Law Journal Newsletters*, December 2010
- "Six Ways a Board Can Manage FCPA Risk," *Corporate Board Member Magazine*, October 1, 2010
- "UK Serious Fraud Office Discusses Details of UK Bribery Act with Gibson Dunn," September 7, 2010
- "Erosion of the Fiduciary Duty Requirement in Insider Trading Actions," *Securities Litigation Journal*, American Bar Association, Spring 2010
- "Narrow, Don't Abolish: The Facilitating Payments Exception to the FCPA," *The New York Law Journal*, July 8, 2010
- "Mutual Fund Litigation Triggered By the Credit Crisis," *The Review of Securities & Commodities Regulation*," June 3, 2009
- "Under the FCPA, Who is a Foreign Official Anyway?", *The Business Lawyer*, 2008
- "Due Diligence Under the Foreign Corrupt Practices Act: Defining a Foreign Official," *Clifford Chance US Regulatory & White Collar Update*, 2008
- "Anti-Money Laundering Laws and Regulations for Broker-Dealers: Spotlight on Foreign Broker-Dealers," *Clifford Chance Client Memo*, 2008
- "The U.S. Foreign Corrupt Practices Act and its Application to Foreign Companies that Do Not Issues Securities in the U.S.," *Clifford Chance Client Memo*, 2008
- "Five Things to Know About the FCPA," *Corporate Compliance Zeitschrift*, January 2008
- "SEC on Corporate Penalties: Two Steps Forward, One Step Backward," *New York Law Journal*, February 2006
- "Toward True Deterrence of Government Misconduct," *New York Law Journal*, October 2004
- "Regulation FD," *New York Law Journal*, October 2002

### Recent Media

- "SEC Loses Insider-Trading Case," *The Wall Street Journal*, May 30, 2014
- "After Fighting Insider Trading Charges for 10 Years, a Fund Manager Is Cleared," The New York Times, May 30, 2014
- "12 Years Later, a Fund Manager Gets to Give His Side," *The New York Times*, May 27, 2014
- "Nelson Obus's Lawyer Says His Client Is Honest or the 'Lamest Insider Trader in History'," *The Wall Street Journal*, May 19, 2014
- "NY fund manager made insider trading 'jackpot,' SEC tells jurors," *Reuters*, May 19, 2014
- "The Wolf Hound Of Wall Street: Joel M. Cohen on Jordan Belfort, White Collar Work, And Corruption." *Forbes*, May 6, 2014
- "Inside Money: The real sheep of Wall Street?," *The New Zealand Herald*, January 14, 2014

- "Prosecutors Give Poor Reviews to Restitution From 'Wolf of Wall Street'," *WSJ.com*, January 12, 2014
- "Jordan Belfort: The real wolf of Wall Street and the men who brought him down," *The Independent*, January 12, 2014
- "Boulton and Co.", *Sky News*, January 10, 2014
- "The Wolf of Wall Street: Why we like a villain," *BBC News*, January 9, 2014
- "'Wolf of Wall Street' prosecutor says film glorifies Belfort," *Fox Business*, January 9, 2014
- "Blockbuster Backlash," *CBS Morning News*, January 8, 2014
- "The Wolf of Wall Street Glorifies Crook's Misdeeds Critics Say," *CBS Insider News*, January 8, 2014
- Op-ed, "The Real Belfort Story Missing From 'Wolf' Movie," The New York Times, January 7, 2014
- "'Wolf of Wall Street' Prosecutor Lambasts the Movie - Joel Cohen on Jordan Belfort," *WSJ.com*, January 2, 2014
- "Gibson Dunn teams with Lawyers Without Borders on Kenyan anticorruption effort," *National Law Journal*, August 21, 2012
- "Pro Bono Hot List," *National Law Journal*, January 2, 2012
- "The Curious Case of Nelson Obus," *The New York Times*, Sunday Business Section Feature Article, June 5, 2011
- "Attorneys from Gibson Dunn Tally 9000 Hours in Day Laborer's Cause," *National Law Journal*, March 24, 2011
- "Danbury 11," Editorial, *The New York Times*, March 14, 2011

**PRACTICES**

- Real Estate Investment Trust (REIT)
- Securities Enforcement
- Securities Litigation
- White Collar Defense and Investigations

**EDUCATION**

- Duke University
*1988 Juris Doctor*
*1988 Master of Arts*
- Middlebury College
*1984 Bachelor of Arts*

**ADMISSIONS**

- Massachusetts Bar
- New York Bar

**RECENT PUBLICATIONS**

Webcast - Financial Institutions in the Crosshairs: The False Claims Act and FIRREA

Decoding FCPA Enforcement: The U.S. Government Issues Comprehensive Guidance on the Foreign Corrupt Practices Act

Nepotism: Friendly Relations? When Nepotism May Violate the FCPA

Foreign Corrupt Practices Act

Does That Settle It? Well, Maybe Not

FOLLOW PLI:                                                                     Contact Us | Help

About Us | Membership | Program Catalog | Blogs | Credit Info | Media/Press Inquiries | Disclaimer | Privacy Policy | About our Ads | Terms of Use
All Contents Copyright © 1996-2016 Practising Law Institute. Continuing Legal Education since 1933.

# EXHIBIT G

# Duke Energy Corp.
# <u>Unsupported Factual Allegations in Defendants'</u>
# <u>Motion to Dismiss</u>

***After conducting a reasonable investigation***, the Board, in the exercise of is business judgment, refused Plaintiff's demand." (p. 1)

On June 24, 2014, the Board appointed a Demand Review Committee (the "Committee") ***comprising four independent directors*** in response to a letter sent by another Duke Energy stockholder ... (p. 2)

***The Committee was charged with investigating the demand's breach of fiduciary duty allegations*** relating to the Company's coal ash management ... (p. 2)

The Board tasked the Committee with analyzing those claims and recommending to the Board whether to pursue the litigation.  (p. 2) (same comment as above)

To assist the Committee with its investigation, the Committee engaged the law firm Gibson, Dunn & Crutcher LLP ("Gibson Dunn") ***as independent counsel.*** (p. 2)

Over the next several months, ***the Committee investigated the claims*** alleged in both demands. ***Informed by its investigation*** into those allegations and by the resolution of the federal criminal investigation relating to coal ash management issues (which resulted in negligence-based pleas and no charges against any Company employees), the Committee determined that the Company's officers and directors breached no fiduciary duties relating to Duke Energy's coal ash management. (p. 2)

The Committee ***also identified several practical factors*** that weighed against pursuing the claims and also determined that claims relating to the 2012 Merger, which were being litigated in pending derivative litigation filed in 2012***, were time-barred.***

Accordingly, ***in a report memorializing its investigation***, the Committee recommended that the Board refuse the demands, which, after deliberation, the Board did. (p. 3)

In May 2014, before the Board's receipt of the Demand described above, the Board received a similar demand from stockholder Mitchell Pinsky ... (p. 5).

On May 14, 2015, two of the Company's subsidiaries pled guilty to nine misdemeanor violations of the Clean Water Act relating to the Dan River spill and the Company's coal ash management. ***Informed by the resolution of the criminal investigation*** – which resulted in negligence-based violations of the Clean Water

Act by Company subsidiaries and no charges against any officers, directors or employees of the Company – ***the Committee continued to investigate*** the allegations set forth in the demands.  (p. 6)

Statements regarding the September 4, 2015 demand refused letter at pp. 6-7 of the brief.  "After completing its investigation, ***the Committee concluded that the 'Company's directors and officers did not breach their fiduciary duties ... and a "number of other factors ...weighed against bringing litigation*** ... The Committee presented its written Report and Recommendation to the Board on August 27, 2015. After considering the Committee's Report and Recommendation, the Board refused both Plaintiff's and Pinsky's demands. [emphasis added]

## Additional Unsupported Factual Representations

Defendants claim that Plaintiff failed to plead particularized facts that create a reason to doubt the Committee's independence or investigatory process of the full Board's decision to refuse the Demand. (p. 10). There are no facts of record to support Defendants' factual statement and conclusions with respect to these issues.

Defendants seek to contradict (p. 13) Plaintiff's allegations that the Committee abdicated its investigatory duties to Gibson by making conclusory factual statements, i.e.:

> "Indeed, the Committee, with Gibson Dunn's assistance, discussed and formulated ***the appropriate scope of the investigation***, and decided, ***based on legal and prudential considerations***, to recommend to the Board that it refuse the Demand."

Defendants to contradict (pp. 13-14) Plaintiff's allegations that there was no witness testimony under oath, transcripts, etc. by relying on the federal criminal and regulatory investigations into the Company's coal ash management.

> ***"This was an extensive record upon which the Committee reasonably could rely in conducting its investigation."*** (p. 14).

Defendants do not say how the criminal investigation or nine misdemeanor pleas support the conclusion that there was no breach of fiduciary duty by any of the officers/directors or on what, specifically, they are relying.

> "The Complaint alleges no facts regarding the quality of the Committee's investigation or the Board's consideration of the Committee's Report and Recommendation." (p. 14)

The Report and Recommendation was not provided to Plaintiff nor to the Court.

"Following its investigation, the Committee concluded that the Company's officers and directors did not breach their fiduciary obligations with respect to coal ash management – a conclusion validated by the government's findings in the criminal investigation and entitled to deference."  (p. 15)

"The Committee also considered *several other factors that weighed against bringing litigation, including, inter alia, the low chances of success; the substantial costs of litigation; [and] the unavailability of directors' and officers' liability insurance to satisfy any successful claim.*" (p. 15 ) [emphasis added]