1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                                  - - -

4    SAUL BRESALIER, suing derivatively on
     behalf of DUKE ENERGY CORPORATION,          : CIVIL ACTION
5                                                 :
                    Plaintiff,                    :
6    v                                            :
                                                  :
7    LYNN J. GOOD, MICHAEL G. BROWNING,           :
     DANIEL R. DiMICCO, JOHN H. FORSGREN,         :
8    ANN MAYNARD GRARY, JAMES H. HANCE, JR.,      :
     JOHN T. HERRON, JAMES T. RHODES, JAMES       :
9    B. HYLER, JR., HARRIS DELOACH, JR.,          :
     CARLOS A. SALADRIGAS, WILLIAM E. KENNARD,    :
10   E. MARIE MCKEE, RICHARD A. MESERVE,          :
     JAMES E. ROGERS, G. ALEX BERNHARDT,          :
11   E. JAMES REINSCH, WILLIAM BARNETT III,       :
     and PHILIP R. SHARP,                         :
12                                                :
                    Defendants,                   :
13   and                                          :
                                                  :
14   DUKE ENERGY CORPORATION,                     :
                                                  : NO. 15-998-LPS
15                  Nominal Defendant.
                                         - - -
16
                               Wilmington, Delaware
17                           Wednesday, June 15, 2016
                              *Oral Argument Hearing*
18
                                  - - -
19
     BEFORE:         HONORABLE **LEONARD P. STARK**, Chief Judge
20
     APPEARANCES:                    - - -
21

22              MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
                BY:  SIDNEY S. LIEBESMAN, ESQ., and
23                   LISA ZWALLY BROWN, ESQ.

24                        Counsel for Plaintiffs

25                                   Brian P. Gaffigan
                                     Official Court Reporter

```
1    APPEARANCES:  (Continued)

2
                   MORRIS NICHOLS ARSHT & TUNNELL, LLP
3                  BY:  KENNETH J. NACHBAR, ESQ., and
                        SUSAN WOOD WAESCO, ESQ.
4
                        and
5
                   SIDLEY AUSTIN, LLP
6                  BY:  STEVEN M. BIERMAN, ESQ.
                        (New York, New York)
7
                             Counsel for Defendants
8

9

10

11

12

13

14                           - oOo -

15                    P R O C E E D I N G S

16              (REPORTER'S NOTE:  The following oral argument

17   hearing was held in open court, beginning at 3:31 p.m.)

18              THE COURT:  Good afternoon.

19              (The attorneys respond:  "Good afternoon, Your

20   Honor.")

21              THE COURT:  I'll have you put your appearances

22   on the record for us please.

23              MS. BROWN:  Good afternoon Your Honor.  Lisa

24   Brown from Montgomery, McCracken, Walker & Rhoads on behalf

25   of plaintiff.  With me today at counsel table is my
```

1    colleague, Steve Liebesman.  We also have some summer

2    associates with us, Mara Smith, Carla Grass, Bianca

3    Valcarce, and Raul Mendez.  They will be monitoring today's

4    hearing.

5              THE COURT:  Welcome to all of you.

6              MR. NACHBAR:  Good afternoon, Your Honor.

7              THE COURT:  Good afternoon.

8              MR. NACHBAR:  Kenneth Nachbar from Morris

9    Nichols Arsht & Tunnell here on behalf of the defendants.

10   With me is Susan Waesco of my firm, Steve Bierman of Sidley

11   Austin, Michelle Spak who is in-house counsel at Duke, and

12   we also have a summer associate, Gerard Horowitz who is also

13   in the courtroom.

14             THE COURT:  Welcome.  Thank you to all of you.

15             We're here on argument on the plaintiff's motion

16   to convert the motion to dismiss to a motion for summary

17   judgment so we will hear from the plaintiff first.

18             MS. BROWN:  Thank you, Your Honor.  Again, Lisa

19   Brown on behalf of plaintiff from Montgomery McCracken.

20   Your Honor, I understand from your letter that each side is

21   permitted 45 minutes.  I think my opening remarks will take

22   nearly that long.  And with Your Honor's permission, I'd

23   like to save some time for rebuttal if that is appropriate.

24             THE COURT:  It is appropriate.  You can have

25   whatever is left of the 45 minutes which hopefully will be

1    significant but we'll see after you are done with your

2    presentation and my questions.

3              MS. BROWN:   Thank you, Your Honor.

4              So as I said, I believe we can keep this keep

5    this relatively brief because we're here on a procedural

6    issue that will be plaintiff's motion to convert.

7              As Your Honor is aware, we filed the complaint

8    in this action in October 30th, 2015.  Prior to that, we

9    had served a demand on the Board which was refused.  After

10   we filed our complaint and response, there was a motion to

11   dismiss filed by defendants.  They also provided their

12   opening brief in support of the motion.

13             What defendants did, though, was include the

14   demand refusal letter which was not a part of the complaint.

15   What that did was introduce extraneous facts into the

16   record.

17             As Your Honor is well aware, when considering

18   a motion to dismiss, it is a purely legal motion.  The

19   allegations in the complaint are taken as true.  So we did

20   not rely in the complaint on the allegations that are in the

21   demand refusal letter, and by doing that, Your Honor, we

22   have been prejudiced.  Plaintiff has been prejudiced in this

23   matter introducing those facts into the record.

24             If the Court were to grant the motion, and that

25   is the full record in this case, plaintiff would have no

1    opportunity to look into those facts that have been now in

2    the record.  We've had no opportunity to challenge them.

3    So that is why on that basis, we are not trying to do any

4    end-runaround our pleading standard under 23.1, as

5    defendants state in their response.  Rather, what we are

6    trying to do is make this be a fair proceeding.

7            If they're going to introduce extraneous facts,

8    then plaintiff either deserves the right to take limited

9    discovery as to those facts or we would ask that Your Honor

10   disregard the extraneous facts mostly coming from the demand

11   refusal letter.

12           THE COURT:  Well, let's stop there.

13           So you say you didn't rely on the demand refusal

14   letter.  They say there are certain facts in your complaint

15   that could only have come from the demand refusal letter.

16   Aren't they right about that?

17           MS. BROWN:  Your Honor, there are very few

18   facts that are -- to which there is no dispute that have

19   come from that letter.  For instance, we don't dispute that

20   the names of the persons, the four people involved in the

21   Review Committee.  Those names came from that.  Nor the fact

22   that obviously the demand refusal letter refused the demand.

23           However, if you take a close look at that letter

24   or even a cursory look for that matter, the substance of it

25   is what the Committee relied on.  They talk about the Report

1    and Recommendations.  Now, that is itself a problem because

2    not only did they not attach it, we've never seen that.  So

3    there is no -- they mentioned the Report and Recommendations

4    which is the basis which formed their refusal.  We have

5    never seen it.  We have no idea what is in that.

6              THE COURT:  But, if the measure whether or not

7    it is fair to consider the demand refusal letter on a motion

8    to dismiss is whether the plaintiff relied on it for its

9    complaint, it seems to me from what you have just said, you

10   acknowledge you did rely on it.

11             MS. BROWN:  We used certain facts that were in

12   that.  I believe the standard is whether it was integral

13   or explicitly relied upon.  I would not agree that it is

14   explicitly relied upon.

15             As I mentioned, there are very few facts that

16   were taken from that letter but the sum and substance of

17   the letter, particularly the allegations cited in the

18   defendants' motion to dismiss brief, we did not rely on, nor

19   have they been put before the Court.  And if the Court is

20   to consider them again, that is why we ask this be converted

21   to a motion for summary judgment, so we can take discovery

22   as to those things, so we can ask for the Report and

23   Recommendations.

24             Keeping in mind when we first sent the demand

25   prior to filing the complaint, we did request these kinds of

1    materials and we were denied those materials.  We had asked

2    for some background on things that were relied upon by the

3    Committee, what kind of considerations the Committee was

4    looking at, and we were not given any of that information.

5         THE COURT:  So is it fair to say that the demand

6    refusal letter was integral to your complaint at least to

7    the extent that it is the basis by which you know your

8    demand was refused and the basis by which you know which of

9    the directors were on the Committee?

10        MS. BROWN:  As to those two points, we use that

11   letter.  I don't know -- I mean if "integral" means it is

12   the only means by which we knew it at that point in time,

13   then I would have to say yes.

14        Again, I don't believe that that makes it

15   integral to the complaint that those two facts were garnered

16   from the demand refusal letter.  I think there are quite a

17   few other allegations from that letter as well as, again,

18   the Report and Recommendations which we have never seen that

19   have been put into the record.

20        That, basically, they're asking the Court,

21   defendants are asking the Court to take their allegations

22   as true, and that is not the standard on the motion to

23   dismiss.  The motion to dismiss standard is again taking the

24   plaintiff's allegations as true.  If plaintiff's allegations

25   were as baseless as defendants claim them to be, and if our

1    legal standard was not met, and if we did not meet 12(b)(6),

2    there would have been no need for extraneous facts to be

3    introduced by defendants.  They simply could have said, Your

4    Honor, under these circumstances they have not met their

5    pleading stand under 23.1.  You know, they don't have a

6    basis under 12(b)(6).  Therefore, deny the motion.

7         They didn't do that.  Instead, they introduced

8    these extraneous facts.  And, again, without a chance to delve

9    into them and have them be a part of the record undisputed and

10   without being able to be uncontested facts and taken as true,

11   which we don't believe is the appropriate measure here, we

12   believe that plaintiff would be prejudiced with that.

13        So what we had asked, Your Honor, was to either

14   convert the motion to summary judgment -- the problem with

15   that, though, is with that we would ask for limited discovery.

16        The other option, and also defendants raise

17   this, is to just disregard the extraneous facts and

18   disregard the demand refusal letter.  The problem with that,

19   Your Honor, is that those facts have already been put in

20   front of Your Honor, and we believe that there has been,

21   the litigation has been tainted by those facts in the sense

22   that it is hard to unsee them once you have seen them.

23        So, obviously, Your Honor, if that is the

24   decision that were to be made, we would certainly abide by

25   that and then ask that the motion be refiled and we have a

1    chance to fully brief that.

2              The other point I would like to raise is that

3    defendants also in their motion in opposition to our motion

4    to convert basically re-briefed their motion to dismiss.

5    However, there was a stipulation between the parties that

6    the briefing on the motion to dismiss was being stayed upon

7    the decision on our motion to convert.

8              So I was not planning to get into the merits of

9    the case today unless Your Honor has specific questions

10   about that.  But we would ask that today, again with our

11   procedural issue whether or not to convert our motion --

12   their motion to dismiss into one for summary judgment and

13   whether or not we're entitled to a limited amount of

14   discovery as to the Committee's report.

15             THE COURT:  The argument about discovery and

16   your entitlement to it, that is only in the event that I do

17   want to consider the demand refusal letter and therefore, I

18   take it, convert to summary judgment?

19             MS. BROWN:  That is correct, Your Honor.

20             THE COURT:  So if I went for the alternative of

21   not considering the demand refusal letter, do you have an

22   argument that you are entitled to discovery before we decide

23   the motion to dismiss?

24             MS. BROWN:  No, Your Honor.  But I think we

25   would ask that, it is not only that the letter itself be

1    taken out but the facts derived from that letter that were

2    included in the opening brief on the defendants's motion to

3    dismiss would also be excluded from the record.

4                    THE COURT:  Right.  So some of that is probably

5    going to just be subject to debate at the motion to dismiss.

6    There are certain allegations in your complaint that the

7    defendants say are conclusory or maybe might argue are legal

8    conclusions, and you presumably would have similar arguments

9    about what they say in their motion to dismiss.  Is that

10   something you think I could sort out today on a motion to

11   convert?

12                   MS. BROWN:  Could you sort out which ones you

13   could take out?

14                   THE COURT:  Right.

15                   MS. BROWN:  I think Your Honor could.  I think

16   it is apparent which ones have come from the letter itself,

17   which allegations have come from the letter.  Disputed, I

18   should say disputed allegations, obviously.  As I said, we

19   did take the name of the Committee members as well as the

20   fact that that letter certainly did deny our demand, though

21   it certainly could stay in.  It's just that, things that the

22   Committee relied on that we have no basis of knowledge other

23   than that demand refusal letter, it's things like that.  But

24   I think that could be parsed.  I'm not asking Your Honor to

25   do that on the spot, but I think that is possible.

1        THE COURT:  Just briefly on the merits.  Since,

2   whether it is today or some other day, eventually it seems

3   as if we'll have to get there.  But with respect to, as I

4   understand your complaint, even you contend there is only

5   two of the claims in the complaint that you made a demand

6   with respect to.  The other three or four you didn't demand

7   that the Board take action, legal action on.

8        Is that a correct understanding of your claims?

9   And have you pled demand futility with respect to those

10  other three or four?

11       MS. BROWN:  That is correct, Your Honor, as

12  to which ones demand was considered for.  As to demand

13  futility, I believe we have.  Again, we'd like the

14  opportunity, should that come up, to brief that fully and

15  make sure we inform the Court in a fully informed manner and

16  make sure we've done the research.  But, yes, I believe we

17  have or we would not have included them in the complaint.

18       THE COURT:  Right.  Because you either need to

19  plead demand refused or demand futility; correct?

20       MS. BROWN:  In a derivative action, yes, Your

21  Honor.

22       THE COURT:  And we're here in a derivative

23  action.

24       MS. BROWN:  Correct.

25       THE COURT:  Do you have any dispute with the

1    Court taking judicial notice of the defendant's SEC filings?

2              MS. BROWN:  No, Your Honor.

3              THE COURT:  Are you disputing the authenticity

4    of the demand refusal letter?

5              MS. BROWN:  No, Your Honor.  We're disputing

6    the factual contents of it.  And that is what we take issue

7    with, is that those are put before the Court to be taken as

8    true fact when in fact we don't know, and there is a dispute

9    as to those.

10             THE COURT:  I think the defendant points out

11   there is a number of letters or correspondence exchanged

12   between plaintiff's attorney and a Gibson Dunn attorney.

13   Some are attached to the complaint, but not the demand

14   refusal letter.  Can you help me understand the reasoning

15   for that?  Would there be an argument that for completeness

16   sake the full correspondence should be before the Court on

17   a motion to dismiss?

18             MS. BROWN:  Sure.  And, Your Honor, I think

19   the decision was made because we feel that the facts stop up

20   until the point that we got back their refusal letter.  We

21   don't know what happened.  Things were happening, we don't

22   know what they are, so the facts of what they did, you know,

23   we believe we know but we don't know the basis for those.

24             Again, they relied on the Report and

25   Recommendations.  We haven't seen it.  So in our mind, it

1    was we have the facts that we needed even aside from the

2    fact they were refusing our demand up until that point.

3    Because we felt that it was, as we take issue today, a

4    self-serving document that was their version of the facts,

5    that it had not been tested, that it wouldn't be fair to put

6    in front of the Court as facts taken as true when in fact

7    we haven't had to chance to test those and to get discovery

8    into those.

9                THE COURT:  And there is some discussion in the

10   briefing about a 220 books and records action.  At least

11   at the time of the briefing, you had not brought such an

12   action.  Is that still true today?

13               MS. BROWN:  That is true, Your Honor.

14               THE COURT:  And does that have any relevance to

15   the issues before me?

16               MS. BROWN:  I don't think so, Your Honor.  The

17   decision was made not to do that.  We understand it was

18   possible.  However, one consideration was that there were

19   other actions pending.  We saw what was asked for and what

20   was denied in some of those other actions.

21               Also, Your Honor, we understand, having been

22   through this before, the way that these committees work,

23   and a lot of what we were seeking would likely not have

24   been produced because it might have been protected by

25   attorney-client privilege.  Those things can be -- there is

1    really no mechanism to get past the privilege issue on a 220

2    demand.  It would be easier in litigation.  So we had

3    considered it, Your Honor.

4                I also believe there is case law to suggest that

5    it's still possible, Your Honor.  Should this case continue,

6    this case could be stayed and we could pursue a 220 action

7    in the Court of Chancery or at least serve a 220 demand.  I

8    don't say we have plans to do that at this time.

9                And, again, it was knowingly done, a 220 demand

10   was not served.  Although, as I mentioned before, documents

11   and information were requested in the demand letter made to

12   the Board.

13               THE COURT:  Okay.  Is there anything else?

14               MS. BROWN:  No, unless Your Honor has further

15   questions.

16               THE COURT:  No, we'll save the rest of your time

17   for rebuttal.  Thank you.

18               And we'll hear from Mr. Nachbar.

19               MR. NACHBAR:  Good afternoon, Your Honor.

20               THE COURT:  Good afternoon.

21               MR. NACHBAR:  This is really a straightforward

22   issue:  Is this letter something that can properly be before

23   the Court.

24               As a matter of Delaware law, before making a

25   demand, Bresalier, if I'm pronouncing it correctly, conceded

1    that the Board of Duke was in a position to exercise

2    business judgment with such a demand.

3              In other words, a stockholder -- and that is

4    the *Levine v Smith* case and other cases that we cited -- a

5    plaintiff can't simultaneously make a demand and claim that

6    a demand would be futile.  So you have your choice.  They

7    chose, at least on the claims that we were talking about

8    here this afternoon, to make a demand.  They've conceded

9    that the Board is in a position, was in a position to

10   exercise its business judgment with respect to that demand.

11             THE COURT:  That is not a concession that the

12   Board did properly exercise its judgment.

13             MR. NACHBAR:  Correct.

14             THE COURT:  Just that it could have.

15             MR. NACHBAR:  Correct.  That it was positioned

16   to.  It was capable of.  Not disable I guess is the way I

17   would put it.

18             So that leaves the plaintiff with a possible

19   wrongful refusal case if the demand is in fact refused.  And

20   the wrongful refusal case, as I think Your Honor knows,

21   having decided one fairly recently, is a fairly difficult

22   pleading standard for the plaintiffs.  They have got to

23   essentially prove that the Board didn't exercise its

24   business judgment in an appropriate way, that it either

25   didn't consider the demand or was just so slipshod that the

1    business judgment rule wouldn't attach.

2             It's not enough to allege I disagree with a

3    decision, and it is not enough for the Court to say if I

4    were on the Committee, I would have reached a different

5    decision.  The whole point of the business judgment rule

6    is that the business judgment is entitled to deference.  So

7    it is a very, very high pleading standard here.

8             We don't ask that the facts in the demand

9    refusal letter be taken as true on this motion.  What we

10   ask is that it be taken as true that those facts were

11   communicated to the plaintiffs.

12            Now, why does that matter?  Because the

13   plaintiffs are going to come in in an answering brief and

14   they're going to make a lot of allegations, some of which

15   may well be counter to the facts.  So it's really to head

16   off some possible Rule 11 motion down the road.  They

17   know what they were told.  They can't in good faith and

18   consistent with Rule 11 allege things that are contrary to

19   what they were told.

20            THE COURT:  To head off the need in your view to

21   file a Rule 11 motion against the plaintiff.

22            MR. NACHBAR:  Correct.  Correct.  And, look, I

23   mean we also think that they did rely on it.  The case law

24   we think is pretty clear that you don't have to specifically

25   cite a document or specifically expressly incorporate it by

1    reference.  If you rely on it to frame your pleadings, it

2    can come in.

3              And, look, it is sort of like the contract in a

4    contract case.  I mean this is a demand refusal case.  They

5    claim that is the wrong year that the Board refused their

6    demand.  The letter refusing the demand is, as they admit,

7    the operative document.  It is the refusal that they're

8    complaining about.

9              So it doesn't seem to me for it to be beyond the

10   pale for the Court to be able to look at that letter to see

11   what was communicated, not necessarily to accept every word

12   in the letter as the gospel truth admitted by the plaintiffs

13   but rather this is what was communicated by the plaintiffs.

14             Now, if in view of that letter, the plaintiffs

15   are able to craft a pleading that the Board did such an

16   awful job or just failed in its duty in an egregious way

17   that they could survive a motion to dismiss, then great,

18   they'll win their motion to dismiss.

19             On the other hand, if they can't meet that

20   pleading standard, the case ought to be dismissed.  I think

21   it is really no more complicated than that, Your Honor.

22             THE COURT:  Let's talk a little bit more about

23   the analogy to an agreement for a breach of contract claim.

24             It seems to me the reason for the rule that you

25   could consider the contract even if the plaintiff didn't

1    attach it to the complaint is because the action clearly

2    arises substantively from that contractual agreement and we

3    don't want to let plaintiff have an opportunity to say you

4    agreed contractually to buy all your goods from them when it

5    is black and white in the contract that you didn't.

6           This seems like a different circumstance.  The

7    substantive claims are not at all based on the demand

8    refusal letter, and it seems like the risks that those

9    cases talked about allowing us to look at, for instance, a

10   contract are not present here.

11          MR. NACHBAR:  But I think their claim is based

12   on the refusal letter.  I mean the question that Your Honor

13   is going to have to face, you know, not today but after

14   briefing is based upon what plaintiffs were told and what

15   they knew, have they alleged sufficient facts to overcome

16   the presumption of the business judgment rule to state a

17   claim for wrongful refusal?

18          And so what they were told is important:  If

19   they were told that the Committee met many times or that

20   Committee was advised by competent counsel or the Committee

21   diligently considered claims, they have to plead something

22   to overcome that.

23          The business judgment rule, it is a presumption.

24   It is a presumption that the Board acted properly and it is

25   plaintiffs' pleading burden to overcome that presumption.

1    It is a very difficult burden.

2         And I think what is in the demand refusal

3    letter, again, it is not dispositive but it certainly isn't

4    irrelevant either.  It is part of the mix that needs to be

5    considered.  That is why we think it is properly before the

6    Court.

7         And we think the cases, you know, say that.  The

8    *Burlington Coat* case and the *Trump Resorts* case we think are

9    squarely on all fours.

10        The *Fagin* case that they cite and the other

11   cases they cite are very different.  Those are instances in

12   which the defendants try to put in documents that were not

13   available to the plaintiff.  And the Court said, no, you

14   can't do that.

15        Here, of course, the demand refusal letter was

16   sent to one person, plaintiffs' counsel.  That is the only

17   person.  Maybe it was cc'd to somebody but they were the

18   addressee.  They had it all relevant times.

19        That also brings us to the report.  As

20   plaintiffs' counsel admitted, they specifically didn't ask

21   for a copy of the report.  And there is a reason for that.

22   It is a tactical choice that they made.

23        Under Section 220, the Delaware state law is

24   very clear, the *Morgan Stanley* case says if you make a

25   demand, the demand is refused, you make a 220 request for

1    the report.  You are entitled to the report.

2              So by asking for it in proper form, they could

3    have received it.  And as they have admitted, they haven't

4    asked for it and therefore haven't received it.  And that

5    is a tactical choice that they have made because they feel

6    if the whole report were before the Court, the argument for

7    them would get worse probably.  And, you know, they're

8    probably right about that.  It's not a crazy choice to make.

9              In fact, another shareholder plaintiff requested

10   a copy of the report, was given a copy of the report and

11   hasn't filed the wrongful refusal case or any -- we haven't

12   heard from them, despite having gotten the report, you know,

13   months and months ago.  They were evidently satisfied by it.

14             So the plaintiffs don't want the report.  And

15   that is a tactical choice that they're allowed to make.  But

16   they still have to meet their pleading burden, and they

17   can't meet their pleading burden by alleging things that

18   are contrary to what is in the letter that they receive.

19             That is the point, and that is why the letter is

20   important.  It is not that everything in it is necessarily

21   -- you know, if they say we held 12 meetings and interviewed

22   six people, that doesn't mean that the plaintiffs have

23   admitted that they met 12 times and interviewed six people.

24   What it means is they can't allege, consistent with Rule 11,

25   that the Committee only met once or the Committee didn't

1     interview anybody.  That's the point.

2                 THE COURT:  Well, there is Rule 11, but then

3     there is what the record will be before the Court when we

4     get to the motion to dismiss.

5                 If they choose, for whatever reason,

6     notwithstanding having not received the letter, to allege

7     the Committee never met -- let's just say, I don't recall

8     but let's say the letter says they met 12 times, to take

9     your example, and the plaintiff comes into court and says

10    our allegation is the Committee never met.

11                Again, putting aside whether they're committing

12    unethical conduct or going to be subject to Rule 11, when

13    I evaluate the motion to dismiss, do I take as true the

14    Committee never met or, if I've got the letter in front of

15    me, are you suggesting now I am going to have to say the

16    Committee did meet and maybe they met 12 times?

17                MR. NACHBAR:  I think what you are going to have

18    to say is that the plaintiffs have no basis for their

19    conclusory allegation that is without basis in fact.  I mean

20    it is one thing if they had a confidential informant and one

21    of the Committee members said, yeah, the letter is false, we

22    never met and then have a John Doe allegation.  That's fine.

23    Then they pled something that is specific.

24                But a conclusory allegation that is contrary to

25    the written record I submit is problematic.  And if what

1    Your Honor is saying is, well, Rule 11 is the only remedy

2    that you have as a defendant, then if we come to that path,

3    then I guess we'll make a Rule 11 motion.

4              But it seems to me that the letter is integral

5    enough to all of this that it should be before the Court.

6    And we certainly don't think there was anything improper in

7    our attaching it.

8              Now, we also I think all agree that Your Honor

9    can decide the motion without considering the letter, and

10   that is certainly an alternative.

11             Again, I think the case law is pretty clear that

12   Your Honor can and should have the letter in the record,

13   but I think both sides are in agreement that Your Honor can

14   consider the motion without considering the letter.  And

15   I'm glad to hear that plaintiffs are not contending that,

16   you know, having put the letter as an exhibit to our opening

17   brief, that somehow the door is now open to discovery.

18   They say they want discovery only if Your Honor is going to

19   consider the letter.

20             Again, we think Your Honor can consider the

21   letter without converting this to summary judgment and

22   without opening the discovery door.  But plaintiffs now seem

23   to be saying that if Your Honor doesn't consider the letter,

24   then their request for discovery would be deemed withdrawn.

25             THE COURT:  Well, I would like to view this

1    alternative as something agreeable to both sides, but I'm

2    not quite sure if it is.

3           You agree the alternative, I know it is not your

4    preference but the alternative is that I don't consider the

5    letter, don't give discovery but just go to the motion to

6    dismiss, but the plaintiff further wants me not to credit

7    any of the disputed factual allegations that are in the

8    letter but are also I think in your motion to dismiss brief

9    and presumably would be in any renewed briefing.  I take it,

10   you don't agree to that.

11          MR. NACHBAR:  We don't.  And, again, we think

12   that the law is pretty clear.  We haven't heard *Burlington*

13   *Coat* and *Trump Casinos* distinguished in any meaningful way.

14   And those cases clearly say that when you have relied on a

15   document to draft your pleading that the Court may consider,

16   may at least look at that document.

17          That is clearly the case here.  They've clearly

18   considered the demand letter.  They have admitted it here

19   this afternoon.  Therefore, we think the Court can properly

20   look at that letter as part of our motion to dismiss without

21   implicating discovery.

22          THE COURT:  So you all clearly, I'm sure,

23   looked at the Report and Recommendation that was sent to the

24   Committee.  You say you didn't rely on it in drafting your

25   motion to dismiss brief.  But why isn't it the same analysis

1   that you would have me apply to them apply to you?  Mind

2   you, if we have to get to the report, then obviously we need

3   discovery because they don't have it.

4           MR. NACHBAR:  Well, so a couple of things.

5           The most straightforward answer to Your Honor's

6   question is the law is not that if somebody looks at

7   something in drafting an opening brief in support of our

8   motion to dismiss, the other side gets it.  The law is if

9   you rely on it in drafting your complaint, the other side

10  gets it.

11          And there is a reason for that.  Because on the

12  motion to dismiss, it is a plaintiff friendly standard, you

13  know, facts are reasonably pled.  Well pled facts are deemed

14  to be true.

15          On a wrongful refusal claim, the plaintiffs

16  have a little bit higher burden.  They have got to show

17  particularized facts but still there are presumptions.

18          The second thing that is important is the

19  plaintiffs don't want the report.  I mean if they wanted the

20  report, they would have filed a 220 demand, and we would

21  have given it to them just as we gave it to Pinsky's counsel

22  who did make a 220 demand.  They don't want it.  And they

23  said they made a tactical choice not to make a 220 demand.

24          So I don't think they can now reverse course and

25  say, well, now we want it.  I mean if they did do that, we

1    cross that bridge, I suppose.

2              But I don't think they're going to do that.  I

3    don't think they want it because they know it's not going

4    to help their case.  It's just going to make it worse.

5    Everything that is in the letter that they don't like is

6    going to be in the report in a much more, you know, better

7    elaborated in a much longer and detailed form.  So they

8    don't want it.

9              And that's fine.  We're not trying to put the

10   report in.

11             THE COURT:  So they write in the motion to

12   convert, it is on page 16, but I'll read it to you:  "There

13   is no evidence whatsoever as to the independence of the DRC

14   numbers and counsel, the scope of the investigation, who was

15   interviewed and by whom, what documents were reviewed, how

16   the investigation was informed by the criminal investigation

17   and plea or the basis upon which the DRC reached its

18   conclusion."

19             Again, they say there is no evidence whatsoever

20   for that.  What is the response to that?

21             MR. NACHBAR:  Well, I think that is not for

22   today.  I mean they will get to write an answering brief on

23   a motion to dismiss at some point, and they'll make whatever

24   arguments they want to make, and then we'll write a reply

25   brief, and we'll argue about whether those are sufficient to

1    state a wrongful refusal case or not.

2              It is a high pleading standard, and there doesn't

3    have to be evidence that the special Committee conducted --

4    you know, as to the scope of their investigation as to who

5    they interviewed and all of the things that Your Honor just

6    read.  That is not what is required to defeat, to win a motion

7    to dismiss in a wrongful refusal case.

8              All I have to allege or all I have to prove is

9    that they haven't alleged a deficiency.  So uncertainty

10   about the scope, that is not good enough.  They've got to

11   allege facts, specific facts that, if true, would show that

12   the Committee's work was improper, tainted, inappropriate.

13             I don't think they can do that.  And I think

14   that they certainly can't do that consistent with what's

15   been reported to them in the wrongful refusal -- in the

16   refusal letter.

17             So that's why we think the letter is

18   appropriate.  That is why it should be before the Court.

19   Because as some point, we think you will be able to hold up

20   what they allege in their answering brief and compare it to

21   what is in the letter and see if it rings true, and I don't

22   think it will.

23             So I think Your Honor will be in the position

24   of concluding that they're saying things that have no basis.

25   They have no basis in the complaint.  They have no basis in

1    fact.  They're just the type of conclusory allegations that

2    aren't credited in a wrongful refusal case.

3                THE COURT:  Okay.  Is there anything else?

4                MR. NACHBAR:  Nothing further, Your Honor.

5                THE COURT:  All right.  Thank you.  We'll turn

6    back to plaintiffs and hear from Ms. Brown.

7                MS. BROWN:  Just briefly, Your Honor.

8                First, as Your Honor pointed out, the contract

9    analogy.  There is a big difference between a case involving

10   a contract and what we have here.  A contract has been

11   negotiated by the two parties.  They agreed, and if they

12   didn't there is a real problem, but they agreed to enter

13   into that contract.  They agreed to be bound by it.  And

14   then, therefore, if there is an issue, they bring the

15   lawsuit underneath that.

16               But in this case, we're dealing with a demand

17   refusal letter which was written by counsel.  And what it does

18   is it needs to, for their benefit, it needs to show, oh, here

19   is what we did.  It is a self-serving letter.  So to take the

20   facts there as truth and to have them in the record without

21   being able to be tested is completely different than if you

22   are dealing with any type of a contract.

23               THE COURT:  Well, Mr. Nachbar says they're not

24   asking that if I consider the letter that the facts in there

25   are to be taken as true, just that those facts, assuming for

1    the moment that they're facts, were communicated to the

2    plaintiff.  What is wrong with that?

3              MS. BROWN:  So the facts were communicated.  The

4    problem that we have -- and to back up a little bit.

5    Plaintiff doesn't not want Report and Recommendations.  So

6    one of the big problems with the demand refusal letter --

7    and I have it, Your Honor.  It was an exhibit obviously to

8    their motion to dismiss in the briefing.

9              It says:  "The Committee presented its Report

10   and Recommendations to the Board on August 27th, 2015.

11   After considering the Report and Recommendation, the Board

12   decided to accept the Committee's recommendation to reject

13   your litigation demand."

14             So again, as Your Honor pointed out, to say that

15   they haven't relied on that Report and Recommendation, much

16   like their argument about relying on the refusal letter,

17   seems to be exactly the same.

18             This rejection was based on the Report and

19   Recommendation.  We might not have done a 220 specifically

20   asking for this document, but that doesn't indicate that

21   plaintiffs don't want it.

22             In fact, again, going back to correspondence

23   that was exchanged before the filing of the complaint,

24   Exhibit B to the complaint is a letter from Mr. Greenfield

25   to Mr. Warren where he asks a list of questions about such

1   things as, No. 1, were you or a representative of your firm

2   or any other counsel present at any portion of the meetings?

3   What criteria were used by the Board to determine which of

4   its members would be appointed?  Who participated?  And so

5   on and so on.

6            So there is a list of questions that may be in

7   the Report and Recommendations.  We asked for that

8   information and never received it.  So we might have not

9   called it, at the time, the Report and Recommendations.  The

10  Report and Recommendations may not have been in existence at

11  that time, but we were seeking that type of information.

12           Again, that seems to have formed the basis for the

13  demand refusal letter.  So I don't think it's just the fact

14  that we were communicating.  If we wanted to communicate the

15  basis for it, we were communicating the fact that there was

16  this "things happen" and we said no, but we don't know what

17  the basis for that was.  I think that is a problem that

18  plaintiff has with the letter.

19           THE COURT:  Well, come back to the question,

20  though.  If I were to consider the letter just for what

21  is communicated to you and what is communicated to the

22  plaintiff prior to filing of the suit but not taking any

23  disputed facts in it as true, what would be wrong with that?

24           MS. BROWN:  The fact that we were communicated

25  this information, I don't think there is a problem.  I think

1    it's the problem that, again, we believe it to be written by

2    counsel, self-serving, and we have no basis.  But the fact

3    that we received it, we can't dispute the fact that we

4    received the letter.

5              THE COURT:  As another alternative, if you

6    want the Report and Recommendation today, I know defendants

7    haven't said yet that they would give it to you, but if they

8    would give it to you and the motion were to be considered on

9    the basis of the complaint, the report, and the letter, is

10   that something the plaintiff might be interested in?

11             MS. BROWN:  I certainly can say we would be

12   interested in seeing the Report and Recommendations.  Can I

13   say that would form the basis?  I don't, I can't say that

14   with certainty because I can't say we would still want

15   some -- we would want to know the basis for the Report and

16   Recommendations, but certainly we are not trying to run away

17   from the report because we're nervous or intimidated by what

18   we might find in it.

19             Also, there was an implication that we're trying

20   to head off a Rule 11 motion.  I also take issue with that.

21   Obviously, if plaintiffs didn't think they had some basis,

22   they know Rule 11 and would not have chosen to file a

23   complain in this matter.

24             The only other thing that I would point out is

25   just that certain of the cases raised like the *Burlington*

1  *Coat* and the *Donald Trump* case, those were authentic

2  documents.  There is no question as to authenticity.  I'm

3  not saying I don't believe the letter was jargon as drawn

4  by counsel, but those were I think it was an annual report

5  and things like that.  So I think there is a difference

6  between those types of documents, again, with contracts,

7  there is a difference between those types of documents

8  and a letter written by counsel for the purpose of them

9  trying to avoid litigation, knowing it probably is going to

10  litigation, that they have something to stand on, be it

11  based in fact or not.

12           THE COURT:  Okay.  Is there anything else?

13           MS. BROWN:  Thank you, Your Honor.  No.

14           THE COURT:  Well, let's take a short recess, and

15  I will come back and give you a decision.  We'll be a few

16  minutes.

17           (Brief recess taken.)

18           *    *    *

19           (Proceedings reconvened after recess.)

20           THE COURT:  Have a seat.

21           Thank you for the helpful argument and for

22  presenting a motion that is, as you all acknowledge, a

23  narrow one.  That puts me in the fortunate situation that

24  I'm able to rule today from the bench.

25           So having considered all of the materials that

1    were submitted prior to today and having heard argument and

2    had my questions answered, I'm focused just today on the

3    plaintiff's motion to convert, which is a request that we

4    convert the defendants' motion to dismiss to a motion for

5    summary judgment.

6              That motion is denied.

7              Now, there are further subsidiary issues, one of

8    which is that the Court decide whether or not on the motion

9    to dismiss, it will consider the demand refusal letter.

10             I am going to consider the demand refusal letter

11   when it comes time to decide the motion to dismiss, but I'm

12   only going to consider it for purposes of understanding

13   what was communicated to the plaintiff.  I'm not going to

14   consider the demand refusal letter for the truth of any

15   disputed fact are contained in that letter.

16             Similarly, any extraneous factual statements on

17   matters that are disputed that are contained in the

18   defendants' motion to dismiss briefs will not be considered

19   in resolving the motion to dismiss.

20             There is also the subsidiary dispute as to

21   whether plaintiff is entitled to take any discovery or will

22   be permitted to take any discovery in advance of the Court's

23   ruling on the motion to dismiss.

24             The plaintiff will not be permitted to take such

25   discovery.

1          There are several reasons that I think make what

2     I have said the right outcome on this very narrow motion.

3          First, the plaintiff admits that it did rely on

4     the letter, the demand refusal letter for certain undisputed

5     facts that it did not learn anywhere else -- facts such as

6     who was on the Committee that considered the demand.  And,

7     of course, the fact that the demand was refused.

8          Those facts are in integral to the complaint, at

9     least for the reason that the plaintiff does have to plead

10    that demand was wrongfully refused, and we will have to find

11    that wrongful refusal was adequately pled in order for this

12    case to proceed beyond the motion to dismiss stage.

13         Also, the letter is indisputably authentic and

14    indisputably received by the plaintiff.

15         So I think it is appropriate that we consider

16    the demand refusal letter in connection with the motion to

17    dismiss in assessing the sufficiency of the complaint.

18         And because of all of those reasons, being

19    reasons why it's appropriate to consider the letter, there

20    is no need to convert the motion to dismiss to a motion

21    for summary judgment in order to consider the letter.

22         Why is it appropriate not to allow the plaintiff

23    to have discovery before deciding the motion to dismiss?

24         Well, first, if I understand the plaintiff's

25    position correctly, they're not asking for discovery in

1    light of our decision to not convert to a motion for summary

2    judgment, but also I think it is entirely appropriate to,

3    before granting discovery, attempt to assess the sufficiency

4    of the pleadings on the record -- the record consisting of

5    the complaint and the demand refusal letter to be taken for

6    the limited basis that I have already described.

7              It is also informative that the decision not

8    to allow discovery at this time is consistent with Delaware

9    law.

10             So that is the decision.  That is my reasoning

11   for it.  I will not be writing an opinion.  I'll simply

12   enter an oral order indicating that this is the decision.

13             Now, I understand by stipulation which the Court

14   entered as an order that the briefing on the motion to

15   dismiss has been stayed until this decision today.  I do

16   want the parties to meet and confer and figure out what the

17   remainder of that briefing schedule should be.

18             I'll give you all until Monday to submit

19   something to me.  I'm hopeful that whatever you submit will

20   be a joint proposal, that there won't be any disputes as to

21   what should happen next.

22             Are there any questions about any of what I have

23   said, Ms. Brown?

24             MS. BROWN:  No, Your Honor.

25             THE COURT:  And Mr. Nachbar?

1              MR. NACHBAR:  Nothing, Your Honor.

2              THE COURT:  Okay.  Well, thank you both very

3    much.  We will be in recess.

4              (Hearing ends at 4:31 p.m.)

5

6         I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

7

8                             /s/ Brian P. Gaffigan
                            Official Court Reporter
9                            U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25