# EXHIBIT A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

---

# FORM 8-K

### CURRENT REPORT
Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

---

Date of Report (Date of earliest event reported): **February 20, 2015**

| Commission file number | Registrant, State of Incorporation or Organization, Address of Principal Executive Offices, and Telephone Number | IRS Employer Identification No. |
|---|---|---|
| 1-32853 | **DUKE ENERGY CORPORATION** (a Delaware corporation) 550 South Tryon Street Charlotte, North Carolina 28202-1803 704-382-3853 | 20-2777218 |
| 1-04928 | **DUKE ENERGY CAROLINAS, LLC** (a North Carolina limited liability company) (a North Carolina corporation) 410 South Wilmington Street Raleigh, North Carolina 27601-1748 704-382-3853 | 56-0205520 |
| 1-3382 | **DUKE ENERGY PROGRESS, INC.** (a North Carolina corporation) 410 South Wilmington Street Raleigh, North Carolina 27601-1748 704-382-3853 | 56-0165465 |

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240. 13e-4(c))

**Item 1.01.  Entry into a Material Definitive Agreement.**

On February 20, 2015, Duke Energy Carolinas, LLC ("Duke Energy Carolinas"), Duke Energy Progress, Inc. ("Duke Energy Progress") and Duke Energy Business Services LLC ("DEBS", and together with Duke Energy Carolinas and Duke Energy Progress, the "Companies"), each a wholly owned subsidiary of Duke Energy Corporation, each entered into a Memorandum of Plea Agreement (the "Plea Agreements") in connection with the investigation initiated by the United States Department of Justice Environmental Crimes Section and the United States Attorneys for the Eastern District of North Carolina, the Middle District of North Carolina and the Western District of North Carolina (collectively, the "USDOJ") related to the break of a storm water pipe beneath an ash basin and the resulting release of ash basin water and ash at Duke Energy Carolinas' Dan River Steam Station on February 2, 2014, as well as the Companies' management of coal ash basins in the State of North Carolina.

Under the Plea Agreements, the USDOJ will charge DEBS and Duke Energy Progress with four misdemeanor Clean Water Act violations related to violations at Duke Energy Progress' H.F. Lee Steam Electric Plant, Cape Fear Steam Electric Plant and Asheville Steam Electric Generating Plant.  The USDOJ will charge DEBS and Duke Energy Carolinas with five misdemeanor Clean Water Act violations related to violations at Duke Energy Carolinas' Dan River Steam Station and Riverbend Steam Station.  Duke Energy Carolinas agrees to pay a total of approximately $53.8 million in fines and restitution and $18.5 million for community service and mitigation, and Duke Energy Progress agrees to pay a total of approximately $14.4 million in fines and restitution and $15.5 million for community service and mitigation (collectively, the "Payments").  The Companies also agree to a five-year probation period.  For the duration of the five-year probation period, the Companies agree to establish environmental compliance plans subject to the oversight of a court-appointed monitor paid for by the Companies and for Duke Energy Carolinas and Duke Energy Progress each to maintain $250 million under their Master Credit Facility as security to meet their obligations under the Plea Agreements, in addition to certain other conditions set out in the Plea Agreements.  Payments under the Plea Agreements will be borne by shareholders.  Duke Energy Corporation has agreed to issue a guarantee of all payments and performance due from the Companies, including but not limited to payments for fines, restitution, community service, mitigation and the funding of, and obligations under, the environmental compliance plans.

As announced on February 18, 2015, Duke Energy Corporation will recognize a charge of approximately $102 million (or 14 cents per share) in the fourth quarter of 2014 as a result of the Plea Agreements. This charge will be recognized as a special item and, therefore, excluded from the Company's adjusted diluted earnings per share.

The Plea Agreements are subject to the approval of the United States District Court for the Eastern District of North Carolina and, if approved, will end the grand jury investigation of the Companies' practices at its coal ash basins.

The Plea Agreements do not cover pending civil claims against the Companies related to the Dan River coal ash release and operations at other North Carolina coal plants.  Duke Energy Corporation and the Companies will continue to cooperate with government agencies and defend against remaining civil litigation associated with these matters.

2

**SIGNATURE**

Pursuant to the requirements of the Securities and Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**DUKE ENERGY CORPORATION**

| Date: February 20, 2015 | By: | /s/ Julia S. Janson |
|---|---|---|
| | Name: | Julia S. Janson |
| | Title: | Executive Vice President, Chief Legal Officer and Corporate Secretary |

**DUKE ENERGY CAROLINAS, LLC**

| | | |
|---|---|---|
| Date: February 20, 2015 | By: | /s/ Julia S. Janson |
| | Name: | Julia S. Janson |
| | Title: | Executive Vice President, Chief Legal Officer and Secretary |

**DUKE ENERGY PROGRESS, INC.**

| | | |
|---|---|---|
| Date: February 20, 2015 | By: | /s/ Julia S. Janson |
| | Name: | Julia S. Janson |
| | Title: | Executive Vice President, Chief Legal Officer and Corporate Secretary |

3

EXHIBIT B



North Carolina
change location

 Sign up for Email     Contact Us     Investors

| RESIDENTIAL | BUSINESS | LARGE BUSINESS | OUR COMPANY |

## Corporate Governance

- Code of Business Ethics
- Principles for Corporate Governance
- Information on the Board
- Board Committee Charters
- Stock Ownership Guidelines Policy
- Insider Trading Policy
- Regulation FD Policy
- Related Person Transaction Policy
- **Political Participation**
- Political Activity Policy
- Health Care Reform

### NYSE: DUK
**$71.72**   as of Jan 11 2016 10:43AM

| | |
|---|---|
| Change | +0.68 (+.95%) |
| Volume | .13m |
| Previous Close: | $71.04 |
| 52 Week Low: | $65.51 |
| 52 Week High: | $89.97 |
| Market Cap: | $48.88B |

### IR Contact Info

- Individual Investors
- Institutional Investors
- Fixed Income Investors

🏠 HOME » Investors » Corporate Governance » Political Participation

# Political Participation

Duke Energy strongly supports individual participation in the political process in our communities, including involvement with political parties, candidates or issues, and participation by eligible employees in Duke Energy's political action committee, DUKEPAC. Such activities demonstrate that we care about the communities in which we live and work.

**About DUKEPAC**

As an energy company, we are affected by the decisions made by federal, state and local officials. In turn, these decisions also affect our customers, employees and shareholders.

DUKEPAC is a voluntary, nonpartisan political action committee that:

- Encourages employee awareness of and participation in the political process
- Makes contributions to qualified candidates running for public office.

**Purpose**

The purpose of DUKEPAC shall be to provide the opportunity for individuals to contribute to the support of worthy candidates for local, state and federal office who stand for and foster sound and responsible government, the principles of free enterprise, and legislation to permit business enterprises to function in a responsible manner.

- DUKEPAC By-Laws, Article IV, Section 1.

**Administration**

DUKEPAC is governed by a board of trustees made up of company employees. Any DUKEPAC member may make a recommendation on candidates deserving support, but decisions on which candidates receive contributions are made by the DUKEPAC Board.

Administrative costs associated with operating DUKEPAC are paid by Duke Energy, as allowed by law. Employee contributions, all of which are voluntary, go to federal, state and local candidates.

**Candidate Selection Criteria**

DUKEPAC's board of trustees evaluates candidates using the following criteria:

- The candidate/public official represents part or all of an area in which Duke Energy, or its subsidiaries, conduct business.
- The candidate/public official serves as a member of leadership or a committee with jurisdiction over matters that impact our business.
- The candidate/public official demonstrates support for public policy issues that are important to our business, customers, and communities.
- The candidate/public official is an emerging public policy leader.

**DUKEPAC Officers**

| | |
|---|---|
| Joe Kluttz | Chairman |
| Andy Browning | Vice Chairman |

### Popular Documents

- 📄 Fast Facts
- 📄 Financial Tear Sheet
- 📄 Quarterly Earnings
- 📄 Third Quarter 2015 Form 10-Q
- 📄 2014 Form 10-K
- 📄 2014 Annual Report
- 📄 2015 Proxy Statement
- 📄 2014 Sustainability Report

### Tools

- 🖨 Print Page
- ✉ Email This Page
- ✉ Email Alerts
- 📡 Financial News Feed



| | |
|---|---|
| Larry Valenti | Treasurer |
| Rick Beach | Legal Counsel |
| Susan Francis | PAC Manager |
| Susan Francis | PAC Secretary |

**Political Contribution Reports**

DUKEPAC contributions are publicly disclosed on the following federal and state Web sites.

Federal
Florida
Ohio
Indiana
Kentucky
North Carolina
South Carolina

---

| **Residential** | **Business** | **Large Business** | **Our Company** | **Doing Business With Us** |
|---|---|---|---|---|
| Online Services | Online Services | Standard Services | Careers | Suppliers |
| Billing & Payment | Payment Options | Rates | Investors | HomeServices |
| Start, Stop & Move Service | Billing Options | Billing & Payment | Public Safety | Economic Development |
| Customer Service | Understand Your Bill | Energy Efficiency Services | Environment | Asset Recovery |
| Save Energy & Money | Service Requests | Save Energy & Money | Sustainability | Energy Efficiency and Outdoor Lighting |
| Special Assistance | Electric Rates | Load Curtailment Programs | Community | Builders and Developers |
| Products & Services | Save Energy & Money | Energy Information & Tools | Social Media | Property Managers |
| Outage & Storm Information | Smart $aver® Incentive Program | Business Continuity Services | News | Real Estate Properties |
| Residential Renewable Energy in North Carolina | Products & Services | My Duke Energy | About Us | City, County and Local Government |
| Generate Your Own Power | Outage Information | Renewable Energy | | |
| Our Community | Go for Green with Renewable Energy | Generate Your Own Power | | |
| En Español | Generate Your Own Power | Events Calendar | | |
| Lakes & Recreation | Our Community | National Accounts | | |
| North Carolina Solar Distributed Generation | | | | |
| Electric Rates | | | | |

©Duke Energy Corporation All Rights Reserved        Report an Environmental Concern    Privacy Policy    Terms of Use

# EXHIBIT C

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel 202.955.8500
www.gibsondunn.com

F. Joseph Warin
Direct: +1 202.887.3609
Fax: +1 202.530.9608
FWarin@gibsondunn.com

September 4, 2015

VIA FIRST CLASS AND ELECTRONIC MAIL

Richard D. Greenfield, Esq.
Greenfield & Goodman LLC
250 Hudson St., 8th Floor
New York, NY 10013

Re:   Duke Energy Corporation Litigation Demand

Dear Mr. Greenfield:

I write regarding your letter to the Board of Directors (the "Board") of Duke Energy Corporation ("Duke" or the "Company"), on March 24, 2015 on behalf of Dr. Saul Bresalier (the "Demand Letter").

On June 24, 2014, the Board formed the Demand Review Committee (the "Committee") of independent directors to investigate the allegations in an earlier litigation demand letter; your Demand Letter was referred to the Committee for investigation. The Board retained full authority to take any final action with respect to your Demand Letter. The Board chose William E. Kennard as the Chair of the Committee; the other members are Ann Maynard Gray, Harris E. DeLoach, Jr., and John H. Forsgren. Gibson, Dunn & Crutcher LLP served as counsel to the Committee. The Committee now has completed its investigation and the Board has acted upon the recommendations of its Committee.

Your Demand Letter alleges that:[1] (1) directors and officers of Duke breached their fiduciary duties by knowing and/or grossly negligent mismanagement of Duke's coal ash operations, causing Duke to violate environmental laws and become the subject of criminal investigations and civil lawsuits; relatedly, it references the government's investigation into the North Carolina Department of Environment and Natural Resources' relationship with Duke; (2) Duke directors and officers breached their fiduciary duties in connection with the

---

[1] In addition to alleging breaches of fiduciary duty, your letter also sets forth Dr. Bresalier's general concerns regarding Duke's political contributions and related practices. Because this portion of your Demand Letter does not constitute a formal demand under Delaware law, the Committee was not required to, and did not, make any recommendation regarding it.

**GIBSON DUNN**

September 4, 2015
Page 2

July 2012 merger with Progress Energy. Your Demand Letter requested that the Board commence litigation against the "Board and senior management" for breaches of fiduciary duty.

On May 14, 2015, three of the Company's subsidiaries pleaded guilty to negligence-based criminal violations of the Clean Water Act in connection with: (1) the Dan River Spill; (2) failure to adequately monitor and maintain the coal ash basins at Cape Fear Steam Electric Plant;[2] and (3) small "seeps" of coal ash wastewater which were channeled into rivers at Asheville Steam Electric Generating Plant, H.F. Lee Steam Electric Plant, and Riverbend Steam Station. No directors, officers, or employees of the Company or its subsidiaries were charged with any crimes. Informed by the resolution of the government's investigation, the Committee continued its investigation.

During its investigation, the Committee, with the assistance of Gibson Dunn, discussed and formulated an appropriate scope for the allegations. The Committee's work was tailored to that scope.

After its investigation, the Committee concluded that the Company's directors and officers did not breach their fiduciary duties with respect to coal ash management.[3] The Committee also considered a number of other factors that weighed against bringing litigation, including the low chances of success; the substantial costs of litigation; the unavailability of directors' and officers' liability insurance to satisfy any successful claim; the substantial remedial efforts taken by the Company to overhaul its approach to coal ash management; and the likelihood that litigation would distract key personnel, many of whom spend a substantial amount of time overseeing and implementing the remedial efforts enacted by the Company. Accordingly, the Committee decided to recommend that the Board reject your demand to pursue litigation against the Company's directors and officers for breaches of fiduciary duty.

The Committee presented its Report and Recommendation to the Board on August 27, 2015. After considering the Report and Recommendation, the Board decided to accept the Committee's recommendation to reject your litigation demand.

---

[2] The federal prosecutors did not charge the Company or any of its subsidiaries in connection with de-watering at the Cape Fear station.

[3] With respect to the Duke-Progress merger, the Committee determined that the statute of limitations had run on any claims for breaches of fiduciary duty the Company could bring.

**GIBSON DUNN**

September 4, 2015
Page 3

The Committee's investigation and the Board's consideration of your demand are concluded. To the extent it is appropriate without waiving the attorney-client privilege, I will be happy to answer any questions you or your client may have concerning the Committee's work.

Sincerely,

F. Joseph Warin

FJW/ds

# EXHIBIT D

EX-3.1 2 a14-12843_3ex3d1.htm EX-3.1

**Exhibit 3.1**

<u>EXHIBIT A</u>

AMENDED AND RESTATED CERTIFICATE OF INCORPORATION
OF
DUKE ENERGY CORPORATION

DUKE ENERGY CORPORATION, a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), DOES HEREBY CERTIFY AS FOLLOWS:

1. The name of the corporation is Duke Energy Corporation. The name under which the corporation was originally incorporated was Deer Holding Corp. The name of the corporation was changed to Duke Energy Holding Corp. on June 21, 2005. The original Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on May 3, 2005.

2. This Amended and Restated Certificate of Incorporation, having been duly adopted in accordance with Sections 242 and 245 of the General Corporation Law of the State of Delaware (the "DGCL") and by the approval of the stockholders of the Corporation in accordance with Section 211 of the DGCL, restates and integrates and further amends the provisions of the Amended and Restated Certificate of Incorporation as amended or supplemented heretofore. As so restated and integrated and further amended, the Amended and Restated Certificate of Incorporation (hereinafter, this "Certificate of Incorporation") reads as follows:

ARTICLE FIRST
<u>Name</u>

The name of the corporation is Duke Energy Corporation.

ARTICLE SECOND
<u>Registered Office</u>

The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, City of Wilmington, County of New Castle. The name of the registered agent of the Corporation at such address is The Corporation Trust Company.

ARTICLE THIRD
<u>Purpose</u>

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the DGCL.

ARTICLE FOURTH
<u>Capital Stock</u>

(a) The aggregate number of shares of stock that the Corporation shall have authority to issue is two billion forty-four million (2,044,000,000) shares, consisting of two billion (2,000,000,000) shares of Common Stock, par value $0.001 per share (the "Common Stock"), and forty-four million (44,000,000) shares of Preferred Stock, par value $0.001 per share (the "Preferred Stock").

(b) The Board of Directors of the Corporation shall have the full authority permitted by law, at any time and from time to time, to divide the authorized and unissued shares of Preferred Stock into one or more classes or series and, with respect to each such class or series, to determine by resolution or resolutions the number of shares constituting such class or series and the designation of such class or series, the voting powers, if any, of the shares of such class or series, and the preferences and relative, participating, optional or other special rights, if any, and any qualifications, limitations or

restrictions thereof, of the shares of any such class or series of Preferred Stock to the full extent now or hereafter permitted by the law of the State of Delaware. The powers, preferences and relative, participating, optional and other special rights of each class or series of Preferred Stock and the qualifications, limitations or restrictions thereof, if any, may differ from those of any and all other classes or series at any time outstanding.

(c) Subject to applicable law and the rights, if any, of the holders of any class or series of Preferred Stock or any class or series of stock having a preference over or the right to participate with the Common Stock with respect to the payment of dividends, dividends may be declared and paid on the Common Stock at such times and in such amounts as the Board of Directors of the Corporation in its discretion shall determine. Nothing in this ARTICLE FOURTH shall limit the power of the Board of Directors to create a class or series of Preferred Stock with dividends the rate of which is calculated by reference to, and the payment of which is concurrent with, dividends on shares of Common Stock.

(d) In the event of the voluntary or involuntary liquidation, dissolution or winding up of the Corporation, subject to the rights of the holders of any class or series of the Preferred Stock, the net assets of the Corporation available for distribution to stockholders of the Corporation shall be distributed pro rata to the holders of the Common Stock in accordance with their respective rights and interests. If the assets of the Corporation are not sufficient to pay the amounts, if any, owing to holders of shares of Preferred Stock in full, holders of all shares of Preferred Stock will participate in the distribution of assets ratably in proportion to the full amounts to which they are entitled or in such order or priority, if any, as will have been fixed in the resolution or resolutions providing for the issue of the class or series of Preferred Stock. Neither the merger or consolidation of the Corporation into or with any other corporation, nor a sale, transfer or lease of all or part of its assets, will be deemed a liquidation, dissolution or winding up of the Corporation within the meaning of this paragraph, except to the extent specifically provided in any certificate of designation for any class or series of Preferred Stock. Nothing in this ARTICLE FOURTH shall limit the power of the Board of Directors to create a class or series of Preferred Stock for which the amount to be distributed upon any liquidation, dissolution or winding up of the Corporation is calculated by reference to, and the payment of which is concurrent with, the amount to be distributed to the holders of shares of Common Stock.

(e) Except as otherwise required by law, as otherwise provided herein or as otherwise determined by the Board of Directors as to the shares of any class or series of Preferred Stock, the holders of Preferred Stock shall have no voting rights and shall not be entitled to any notice of meetings of stockholders.

(f) Except as otherwise required by law and subject to the rights of the holders of any class or series of Preferred Stock, with respect to all matters upon which stockholders are entitled to vote or to which stockholders are entitled to give consent, the holders of any outstanding shares of Common Stock shall vote together as a class, and every holder of Common Stock shall be entitled to cast thereon one vote in person or by proxy for each share of Common Stock standing in such holder's name on the books of the Corporation; provided, however, that, except as otherwise required by law, or unless provided in any certificate of designation for any class or series of Preferred Stock, holders of Common Stock, as such, shall not be entitled to vote on any amendment to this Certificate of Incorporation (including any certificate of designations relating to any class or series of Preferred Stock) that relates solely to the terms of one or more outstanding classes or series of Preferred Stock if the holders of such affected class or series are entitled, either separately or together with the holders of one or more other such classes or series, to vote thereon pursuant to this Certificate of Incorporation (including any certificate of designations relating to any class or series of Preferred Stock) or pursuant to applicable law. Subject to the rights of the holders of any class or series of Preferred Stock, stockholders of the Corporation shall not have any preemptive rights to subscribe for additional issues of stock of the Corporation and no stockholder will be permitted to cumulate votes at any election of directors.

ARTICLE FIFTH
Board of Directors

(a) The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

(b) Except as otherwise fixed by or pursuant to provisions of ARTICLE FOURTH relating to the rights of the holders of any series of Preferred Stock, the number of directors of the Corporation shall not be less than nine (9) nor more than eighteen (18), as may be fixed from time to time by the Board of Directors.

(c) A director may be removed from office with or without cause; provided, however, that, subject to applicable law, any director elected by the holders of any series of Preferred Stock may be removed without cause only by the holders of a majority of the shares of such series of Preferred Stock.

(d) Except as otherwise fixed by or pursuant to provisions of ARTICLE FOURTH relating to the rights of the holders of any series of Preferred Stock, newly created directorships resulting from any increase in the number of directors and any vacancies on the Board of Directors resulting from death, resignation, disqualification, removal or other cause shall be filled only by the affirmative vote of a majority of the remaining directors then in office, even though less than a quorum of the Board of Directors. Any director elected in accordance with the preceding sentence shall hold office until the next succeeding annual meeting of stockholders and until his or her successor shall be elected and shall qualify, subject, however, to prior death, resignation, retirement, disqualification or removal from office. No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director.

(e) Except as otherwise fixed by or pursuant to provisions of ARTICLE FOURTH relating to the rights of the holders of any series of Preferred Stock, the directors shall be elected by the holders of voting stock and shall hold office until the next annual meeting of stockholders and until their respective successors shall have been duly elected and qualified, subject, however, to prior death, resignation, retirement, disqualification or removal from office.

(f) Election of directors need not be by written ballot unless the By-Laws so provide.

(g) In addition to the powers and authority hereinbefore or by statute expressly conferred upon them, the directors are hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject, nevertheless, to the provisions of the DGCL, this Certificate of Incorporation, and any By-Laws adopted by the stockholders; provided, however, that no By-Laws hereafter adopted by the stockholders shall invalidate any prior act of the directors which would have been valid if such By-Laws had not been adopted.

ARTICLE SIXTH
Action by Stockholders; Books of the Corporation

(a) Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws may provide. The books of the Corporation may be kept (subject to any provision contained in the DGCL) outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws of the Corporation.

(b) Written Consent. Certain actions required or permitted to be taken by the stockholders of the Corporation at an annual or special meeting of the stockholders may be effected without a meeting by the written consent of the holders of common stock of the Corporation (a "Consent"), but only if such action is taken in accordance with the provisions of this Article Sixth, the Corporation's By-laws and applicable law.

    (i)    Record Date. The record date for determining such stockholders entitled to consent to corporate action in writing without a meeting shall be as fixed by the Board of Directors or as otherwise established under this Article Sixth. Any holder of common stock of the Corporation seeking to have the stockholders authorize or take corporate action by Consent shall, by written request addressed to the secretary of the Corporation and delivered to the Corporation's principal executive offices and signed by holders of record at the time such request is delivered representing at least 20 percent (20%) of the outstanding shares of common stock of the Corporation, request that a record date be fixed for such purpose. The written request must contain the information set forth in paragraph (b)(ii) of this Article Sixth. Following delivery of the request, the Board of Directors shall, by the later of (x) 20 days after delivery of a valid request to set a record date and (y) 5 days after delivery of any information required by the Corporation to determine the validity of the request for a record date or to determine whether

the action to which the request relates may be effected by Consent under paragraph (b)(iii) of this Article Sixth, determine the validity of the request and whether the request relates to an action that may be taken by Consent and, if appropriate, adopt a resolution fixing the record date for such purpose. The record date for such purpose shall be no more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors and shall not precede the date such resolution is adopted. If a request complying with the second and third sentences of this paragraph (b)(i) has been delivered to the secretary of the Corporation but no record date has been fixed by the Board of Directors by the date required by the preceding sentence, the record date shall be the first date on which a signed Consent relating to the action taken or proposed to be taken by Consent is delivered to the Corporation in the manner described in paragraph (b)(vi) of this Article Sixth; provided that, if prior action by the Board of Directors is required under the provisions of Delaware law, the record date shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(ii) Request Requirements. Any request required by paragraph (b)(i) of this Article Sixth (a) must be delivered by the holders of record of at least 20% of the outstanding shares of common stock of the,

who shall not revoke such request and who shall continue to own not less than 20% of the outstanding shares of common stock of the Corporation through the date of delivery of Consents signed by a sufficient number of stockholders to authorize or take such action; (b) must contain an agreement to solicit Consents in accordance with paragraph (b)(iv) of this Article Sixth, (c) must describe the action proposed to be taken by written consent of stockholders and (d) must contain (1) such information and representations, to the extent applicable, then required by Section 2.03(b) of the Corporation's By-laws as though such stockholder was intending to propose an amendment to the Corporation's Restated Certificate of Incorporation or By-laws or other business to be brought before a meeting of stockholders and (2) the text of the proposed action to be taken (including the text of any resolutions to be adopted by Consent) and (e) must include documentary evidence that the requesting stockholder(s) own in the aggregate not less than 20% of the outstanding shares of common stock of the Corporation as of the date of such written request to the secretary; provided, however, that if the stockholder(s) making the request are not the beneficial owners of the shares representing at least 20% of the outstanding shares of common stock of the Corporation, then to be valid, the request must also include documentary evidence (or, if not simultaneously provided with the request, such documentary evidence must be delivered to the secretary within ten business days after the date on which the request is delivered to the secretary) that the beneficial owners on whose behalf the request is made beneficially own at least 20% of the outstanding shares of common stock of the Corporation as of the date on which such request is delivered to the secretary. If the action proposes to elect directors by written consent, the written request for a record date must also contain the information required by Section 3.03 of the Corporation's By-laws. The Corporation may require the stockholder(s) submitting such request to furnish such other information as may be reasonably requested by the Corporation. Any requesting stockholder may revoke his, her or its request at any time by written revocation delivered to the secretary of the Corporation at the Corporation's principal executive offices. Any disposition by a requesting stockholder of any shares of common stock of the Corporation (or of beneficial ownership of such shares by the beneficial owner on whose behalf the request was made) after the date of the request, shall be deemed a revocation of the request with respect to such shares, and each requesting stockholder and the applicable beneficial owner shall certify to the secretary of the Corporation on the day prior to the record date set for the action by written consent as to whether any such disposition has occurred. If the unrevoked requests represent in the aggregate less than 20% of the outstanding shares of common stock of the

      Corporation, the Board of Directors, in its discretion, may cancel the action by written consent.

(iii)   Actions Which May Be Taken by Written Consent. Stockholders are not entitled to act by Consent if (a) the record date request does not comply with this Article Sixth or the Corporation's By-Laws; (b) the action relates to an item of business that is not a proper subject for stockholder action under applicable law; (c) the request for a record date for such action is received by the Corporation during the period commencing 90 days prior to the first anniversary of the date of the immediately preceding annual meeting and ending on the date of the next annual meeting; (d) an identical or substantially similar item of business (as determined by the Board of Directors of the Corporation in its reasonable determination, which determination shall be conclusive and binding on the Corporation and its stockholders, (a "Similar Item")), was presented at a meeting of stockholders held not more than 12 months before the request is received by the secretary of the Corporation; (e) a Similar Item consisting of the election or removal of directors was presented at a meeting of stockholders held not more than 90 days before the request is received by the secretary of the Corporation (and, for purposes of this clause, the election or removal of directors shall be deemed a "Similar Item" with respect to all items of business involving the election or removal of directors), (f) a Similar Item is included in the Corporation's notice of meeting as an item of business to be brought before an annual or special stockholders meeting that has been called but not yet held or that is called to be held within 90 days after the request is received by the secretary of the Corporation; or (g) such record date request was made in a manner that involved a violation of Regulation 14A under the Securities Exchange Act of 1934 or other applicable law. For purposes of this paragraph (b)(iii), the nomination, election or removal of directors shall be deemed to be a Similar Item with respect to all actions involving the nomination, election or removal of directors, changing the size of the Board of Directors and filling of vacancies and/or newly created directorships resulting from any increase in the authorized number of directors.

(iv)   Manner of Consent Solicitation. Holders of common stock of the Corporation may take action by written consent only if Consents are solicited from all holders of common stock of the Corporation entitled to vote on the matter and in accordance with applicable law.

(v)   Date of Consent. Every Consent purporting to take or authorize the taking of corporate action must bear the date of signature of each stockholder who manually signs the Consent, and no Consent shall be effective to take the corporate action referred to therein unless,

      within 60 days of the earliest dated Consent delivered in the manner required by paragraph (b)(vi) of this Article Sixth and not later than 120 days after the record date, Consents signed by a sufficient number of stockholders to take such action are so delivered to the Corporation.

(vi)   Delivery of Consents. No Consents may be dated or delivered to the Corporation or its registered office in the State of Delaware until 60 days after the delivery of a valid request to set a record date. Consents must be delivered to the Corporation by delivery to its registered office in the State of Delaware or its principal place of business. Delivery must be made by hand or by certified or registered mail, return receipt requested. The secretary of the Corporation shall provide for the safe-keeping of such Consents and any related revocations and shall promptly designate one or more persons, who shall not be members of the Board of Directors, to serve as inspectors ("Inspectors") with respect to such Consents. The Inspectors shall promptly conduct a ministerial review of the sufficiency of all Consents and any related revocations and of the validity of the action to be taken by written consent as the secretary of the Corporation deems necessary or appropriate, including, without limitation, whether the stockholders of a number of shares having the requisite voting power to authorize or take the action specified in Consents have given consent. If after such investigation the Inspectors shall determine that the action purported to have been taken is duly authorized by the Consents, that fact shall be certified on the records of the Corporation kept for the purpose of recording the

    proceedings of meetings of stockholders and the Consents shall be filed in such records. In conducting the investigation required by this section, the Inspectors of the Corporation may, at the expense of the Corporation, retain special legal counsel and any other necessary or appropriate professional advisors as such person or persons may deem necessary or appropriate and, to the fullest extent permitted by law, shall be fully protected in relying in good faith upon the opinion of such counsel or advisors.

(vii)  Effectiveness of Consent. No action may be taken by the stockholders by Consent except in accordance with this Article Sixth. If the Board of Directors shall determine that any request to fix a record date was not properly made in accordance with, or relates to an action that may not be effected by Consent pursuant to, this Article Sixth, or the stockholder or stockholders seeking to take such action do not otherwise comply with this Article Sixth, then the Board of Directors shall not be required to fix a record date and any such purported action by Consent shall be null and void to the fullest extent permitted by applicable law. No Consent shall be effective until such date as the Inspectors certify to the Corporation

    that the Consents delivered to the Corporation in accordance with paragraph (vi) of this Article Sixth, represent at least the minimum number of votes that would be necessary to take the corporate action at a meeting at which all shares entitled to vote thereon were present and voted, in accordance with Delaware law and this Certificate of Incorporation.

(viii)  Challenge to Validity of Consent. Nothing contained in this Article Sixth shall in any way be construed to suggest or imply that the Board of Directors of the Corporation or any stockholder shall not be entitled to contest the validity of any Consent or related revocations, whether before or after such certification by the Inspectors, as the case may be, or to prosecute or defend any litigation with respect thereto.

(ix)  Board-solicited Stockholder Action by Written Consent. Notwithstanding anything to the contrary set forth above, (x) none of the foregoing provisions of this Article Sixth shall apply to any solicitation of stockholder action by written consent by or at the direction of the Board of Directors and (y) the Board of Directors shall be entitled to solicit stockholder action by written consent in accordance with applicable law.

ARTICLE SEVENTH
Amendment of Certificate of Incorporation

  The Corporation reserves the right to supplement, amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by the laws of the State of Delaware and this Certificate of Incorporation, and all rights conferred upon stockholders, directors and officers herein are granted subject to this reservation. Notwithstanding the foregoing, this ARTICLE SEVENTH and sections (b) and (d) of ARTICLE FIFTH may not be supplemented, amended, altered, changed, or repealed in any respect, nor may any provision inconsistent therewith be adopted, unless such supplement, amendment, alteration, change or repeal is approved by the affirmative vote of the holders of at least 80% of the combined voting power of the then outstanding shares of stock of all classes of the Corporation entitled to vote generally in the election of directors, voting together as a single class.

ARTICLE EIGHTH
Amendment of By-Laws

  In furtherance and not in limitation of the powers conferred upon it by law, the Board of Directors of the Corporation is expressly authorized to adopt, repeal, alter or amend the By-Laws of the Corporation. No By-Laws may be adopted, repealed, altered or amended in any manner that would be inconsistent with this Amended and Restated Certificate of Incorporation (as it may be adopted, repealed, altered or amended from time to time in accordance with ARTICLE SEVENTH).

## ARTICLE NINTH
### Limitation of Liability

Except to the extent elimination or limitation of liability is not permitted by applicable law, no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty in such capacity. Any repeal or modification of this ARTICLE NINTH by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification with respect to acts or omissions occurring prior to such repeal or modification.

## ARTICLE TENTH
### Liability of Stockholders

The holders of the capital stock of the Corporation shall not be personally liable for the payment of the Corporation's debts, and the private property of the holders of the capital stock of the Corporation shall not be subject to the payment of debts of the Corporation to any extent whatsoever.

## ARTICLE ELEVENTH
### Effectiveness

This Amended and Restated Certificate of Incorporation is to become effective at 12:01 a.m. on May 20, 2014.

IN WITNESS WHEREOF, THE UNDERSIGNED, being the Assistant Corporate Secretary, has executed this Amended and Restated Certificate of Incorporation as of the 19th day of May, 2014, and DOES HEREBY CERTIFY under the penalties of perjury that the facts stated in this Amended and Restated Certificate of Incorporation are true.

By: /s/ DAVID S. MALTZ
Name: David S. Maltz
Title: Assistant Corporate Secretary