# Exhibit A

**GREENFIELD & GOODMAN LLC**
**ATTORNEYS AT LAW**
250 Hudson Street, 8th Floor
New York, NY 10013
**(917) 495-4446**
e-mail: whitehatrdg@earthlink.net

**Richard D. Greenfield**
*Also admitted to the Maryland*
*And Pennsylvania Bars*


June 20, 2016

Ms. Lynn J. Good
Chairman and CEO
Duke Energy Corporation
550 South Tryon Street
Charlotte, NC 28202

FedEx Tracking No. 8063-2507-4942

    Re:    *Demand for Inspection of Books and Records of*
             *Duke Energy Corporation Pursuant to 8 Del. C. § 220*

Dear Ms. Good:

      I write on behalf of our client, Dr. Saul Bresalier, who is presently, and who at all relevant times has been, the owner of shares of the common stock of Duke Energy Corporation ("Duke" or the "Company"). I have attached to this letter a redacted copy of Dr. Bresalier's most recent brokerage statement with the relevant data (Exhibit "A" hereto) and, as well, a duly signed an notarized Power of Attorney executed by Dr. Bresalier running to my firm and our co-counsel, Montgomery, McCracken, Walker & Rhoads (Exhibit "B" hereto).

      I am writing to you to request the production of certain specified books and records pursuant to Section 220 of the Delaware General Corporation Law ("DGCL" and "Section 220") in connection with written demands on the Company's Board of Directors dated March 24, 2015 (the "Demand Letter" Exhibit "C" hereto) and a letter that I received from F. Joseph Warin, Esquire dated September 4, 2015 (the "Demand Refusal Letter," Exhibit "D" hereto).[1]

---

[1] The documents requested herein include all documents in the possession, custody and control of the Company, including without limitation, within the possession, custody and control of the Company's directors and officers (and their agents and counsel) relating to activities within the scope of their affiliation and duties with the Company.

June 20, 2016

Ms. Lynn J. Good
Chairman and CEO
Duke Energy Corporation
Page 2

I address this letter to you as an executive officer of Duke based upon the requirements of Section 220. I am contemporaneously sending a copy to your and Duke's counsel, Kenneth J. Nachbar, Esquire, with the expectation that he will respond to the request on behalf of the Company. Indeed, he will have the letter immediately as I am e-mailing it to him in order that Duke may have additional time in which to gather the documents requested.

The Demand Refusal Letter purports to summarize the investigation and recommendations made by a so-called "Demand Review Committee" ("DRC") of Duke's Board of Directors ("Board") in response to our client's demands upon the Board as expressed in his Demand Letter (and subsequent correspondence with Mr. Warin relating thereto)(collectively, "Dr. Bresalier's Demands").[2]

Pursuant to Section 220, I request that the documents identified in this letter be made available for inspection and copying during the usual hours of business within five (5) business days of receipt of this letter. The purpose of this 220 Demand is to enable us, as Dr. Bresalier's counsel to evaluate the Board's refusal and handling of Dr. Bresalier's Demands, and whether that refusal of the Demands constituted a reasonable and good faith exercise of the Board's business judgment, to respond to any arguments made by defendants in the action styled *Bresalier v. Good, et al*, Civil Action #15-998-LPS, presently pending in the United States District Court for the District of Delaware (the "Litigation" and "Complaint"), with respect thereto, and to amend the Complaint therein to the extent necessary or advisable. If you or your counsel object to any of the requests set out below, please promptly inform me and my co-counsel by e-mail of the specific objections and any the reasons you believe they are valid. We will certainly try to work with you to eliminate duplicative and/or overlapping requests, clarify any ambiguities and otherwise minimize burdens for all concerned. Additionally, if Duke has no documents in its possession or control responsive to a particular request, please so indicate that fact so that we can avoid any potential dispute regarding such documents.

---

[2] It is well established that a Section 220 demand for books and records regarding the investigation by a board committee and the report of its counsel is made for a "proper business purpose" within the meaning of Section 220. *See Louisiana Municipal Police Employees Retirement System v. Morgan Stanley & Co., Inc.*, 2011 WL 773316 at *__ (Del. Ch. March 4, 2011)("*LAMPERS*")("[e]xploring whether a litigation demand was wrongfully refused is a proper purpose for using Section 220"). *Accord generally King. v. Verifone Holdings, Inc.*, 12 A.3d 1140, 1143 (Del. 2010); *Grimes v. DSC Communications Corp.*, 724 A.2d 561, 563 (Del. Ch. Aug. 5, 1998). The documents requested herein are essential to permit our client, through his counsel, to pursue this proper purpose and to assist him in amending his Complaint in *Bresalier v. Good, et al*, Civil Action #15-998-LPS, presently pending in the United States District Court for the District of Delaware".

June 20, 2016
Ms. Lynn J. Good
Chairman and CEO
Duke Energy Corporation
Page 3

On behalf of Dr. Bresalier, I hereby request that, pursuant to Section 220 of the DGCL, that Duke make the following books, records, and documents,[3] available for inspection and copying:

1. Documents sufficient to show the following information relating to any legal services provided directly or indirectly to Duke and/or Progress Energy, Inc.("Progress"), any members of their respective boards of directors, or any person or entity with which any member of such boards of directors is, was or may have been affiliated, by Gibson, Dunn & Crutcher, LLP ("Gibson Dunn"): (a) the general nature and scope of the legal representation; (c) the time period during which any such legal representation was provided and whether such representations are ongoing; (d) the amount of fees received by Gibson Dunn with respect to any such representation; and (e) the amount of time expended and/or billed in connection with any such representation.

2. Documents sufficient to identify and the criteria that were applied to check or confirm the independence of Gibson Dunn, whether it could be objective in connection with Dr. Bresalier's Demands.

3. Documents sufficient to identify and describe the terms of any agreements or understanding between or among Duke and/or Progress, their boards of directors or any committee or member thereof, on the other hand, and Gibson Dunn, with respect to their engagements.

4. Documents sufficient to identify and the criteria that were applied to check or confirm the independence of the members of the DRC and/or to determine whether they had any conflict of interest, bias or other reason why they could not possibly serve on the DRC and/or the identities of any persons who participated in the determination of such criteria.

5. Documents sufficient to identify any personal or professional relationships between Gibson Dunn and any person or entity with which any member of the Board is or may be affiliated.

---

[3] The term "documents" as used herein is to be construed as broadly as possible under the Rules of the Delaware Court of Chancery, and includes, without limitation, any and all correspondence concerning the demanded categories, whether sent via mail, facsimile, electronic communication, or otherwise.

June 20, 2016
Ms. Lynn J. Good
Chairman and CEO
Duke Energy Corporation
Page 4

6. All resolution(s) (or similar documents) of the Board, or any committee thereof, relating in any way to Dr. Bresalier's Demands (or those substantively similar made by or on behalf of any other Duke shareholders), or the investigation conducted pursuant thereto.

7. Documents sufficient to show any and all communications between the DRC or Gibson Dunn, on the one hand, and any member of representative of any law firm (including, *inter alia*, Sidley Austin, LLP or Morris Nichols Arsht & Tunnell, LLP) representing Duke and/or its in-house counsel, relating in any way to Dr. Bresalier's Demands, or the investigation thereof.

8. Any and all reports, presentations and summaries prepared by the DRC or its counsel (including but not limited to Gibson Dunn) relating to the subject matter of Dr. Bresalier's Demands.

9. The minutes of any meeting of the Board, or any committee thereof (including but not limited to the DRC), wherein Dr. Bresalier's Demands were reviewed or discussed.

10. Documents sufficient to identify, by name, job title, and professional affiliation and responsibility, all persons interviewed or questioned by the DRC in connection the investigation summarized in the Demand Refusal Letter.

11. All transcripts, memoranda, or other documents that describe or summarize any meetings, interviews, or discussions with any of the persons identified in response to the previous request.

12. All planning or similar memoranda prepared by the DRC or its counsel relating to the scope of their investigation of the matters referred to in Dr. Bresalier's Demands.

13. Documents sufficient to identify all criteria utilized or applied by the DRC or its counsel in deciding whom to interview (or not) in connection with their investigation of the matters referred to in Dr. Bresalier's Demands including all lists of prospective interviewees.

14. Documents sufficient to identify the conditions imposed by any actual or potential witness upon their cooperation with the investigation conducted by the DRC and its counsel in connection with their investigation of the claims and facts referred to in the Demand Letter.

June 20, 2016

Ms. Lynn J. Good
Chairman and CEO
Duke Energy Corporation
Page 5

15. Documents sufficient to identify whom, if anyone, declined to cooperate or be interviewed by the DRC or its counsel or did not respond to requests made by or on behalf of the DRC.

16. All documents which the DRC and the Board (or their respective counsel) considered, or upon which they relied, in arriving at the conclusions and recommendations set forth in the Demand Refusal Letter.

I assume that, in responding to the requests herein, the Company will be mindful of the limited application of the attorney-client privilege and the work product doctrine in this setting. *See generally Wal-Mart Stores, Inc. v. Indiana Electrical Workers Pension Trust Fund IBEW*, 95 A.3d 1264 (De. Sup. 2014); *Grimes*, 724 A.2d at 563. I and my co-counsel are prepared to execute an appropriate confidentiality agreement with respect to the documents to be produced. As such, we trust that neither Duke nor its counsel will redact documents responsive to the requests made herein. Should such redaction take place, that will place an undue burden upon us, will delay the process we have undertaken and will require the re-production of the documents in un-redacted format.

If any of the foregoing requests for books and records is ambiguous, particularly burdensome or is otherwise objectionable, I trust that you or Duke's counsel will promptly advise us in writing of such issues. As to the actual production of documents, we will be pleased to work with the Company and its counsel to schedule such production to minimize the burdens on it and its counsel so long as there is no undue delay in responding. Moreover, to enable us and your counsel to insure production of the documents requested hereby is as complete as possible so that we can satisfy our respective responsibilities, we ask that you identify by Bates numbers or by another mutually agreed upon means, which documents produced are responsive to which of the numbered categories set forth above.

Sincerely yours,


Richard D. Greenfield
RDG:gw
Enclosures

cc: Kenneth J. Nachbar, Esquire (knachbar@mnat.com)
Sidney Liebesman, Esquire (sliebesman@mmwr.com)
Lisa Z. Brown, Esquire (lbrown@mmwr.com)

# Exhibit B



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | HONG KONG | SAN FRANCISCO |
| 787 SEVENTH AVENUE | BOSTON | HOUSTON | SHANGHAI |
| NEW YORK, NY 10019 | BRUSSELS | LONDON | SINGAPORE |
| +1 212 839 5300 | CENTURY CITY | LOS ANGELES | SYDNEY |
| +1 212 839 5599 FAX | CHICAGO | MUNICH | TOKYO |
| | DALLAS | NEW YORK | WASHINGTON, D.C. |
| | GENEVA | PALO ALTO | |

sbierman@sidley.com
+1 212 839 5510

FOUNDED 1866

June 28, 2016

**By Hand Delivery and Email**

Richard D. Greenfield, Esq.
Greenfield & Goodman LLC
250 Hudson Street, 8th Floor
New York, NY 10013

  Re: <u>Demand for Inspection of Books and Records of Duke Energy Corporation</u>

Dear Mr. Greenfield:

  I write on behalf of Duke Energy Corporation ("Duke Energy" or the "Company") with respect to your June 20, 2016 letter, on behalf of stockholder Dr. Saul Bresalier, pursuant to Section 220 of the Delaware General Corporation Law and addressed to Lynn J. Good, Chairman and CEO of Duke Energy (the "Section 220 Demand"). Nothing in this letter should be construed as a concession that Dr. Bresalier's request, during the pendency of his putative derivative lawsuit, has stated a proper purpose for his 220 Demand or that the documents requested are necessary and essential to any of his stated purposes.

  As a threshold matter, the Section 220 Demand does not state a proper purpose. Under Delaware law, "a stockholder does not act with a proper purpose when the stockholder attempts to use Section 220 to investigate matters that the same stockholder already put at issue in a plenary derivative action." *Baca v. Insight Enterprises, Inc.*, 2010 WL 2219715, at *4 (Del. Ch. June 3, 2010); *see also Cent. Laborers Pension Fund v. News Corp.*, 2011 WL 6224538, at *2 (Del. Ch. Nov. 30, 2011), *aff'd on other grounds*, 45 A.3d 139 (Del. 2012) (dismissing a stockholder's 220 action and stating "once the derivative action is filed, and until the judicial processing of the dismissal motion reaches the point where a recasting of the allegations has been authorized, the stockholder may not, as a general matter, demonstrate a proper purpose for invoking Section 220").

  As the Section 220 Demand explicitly states, Dr. Bresalier's purpose is "to amend his pending Complaint therein to the extent necessary or advisable." However, this rationale cannot circumvent the bar against a Section 220 demand once plaintiff commences an action. As the Court of Chancery found in *Central Laborers*, "by filing its derivative complaint, [the plaintiffs] acknowledged—if, for no other reason than to satisfy its lawyers' Rule 11 obligations—that it



June 28, 2016
Page 2

had sufficient information to support its substantive allegations and its allegations of demand futility . . . . In short, the stockholder plaintiff who files a Section 220 action immediately after its derivative action is acting inconsistently." *Cent. Laborers*, 2011 WL 6224538 at *1. Delaware Courts have not permitted shareholders to use Section 220 to rectify the deficiencies in complaints that were prematurely filed without adequate pre-suit investigation. Because the Section 220 Demand is not being made for a proper purpose, Dr. Bresalier is not entitled to any documents.

Even if the Section 220 Demand stated a proper purpose, under Delaware law, it is otherwise deficient. The stated purpose for the Section 220 Demand is to "enable us, as Dr. Bresalier's counsel to evaluate the Board's refusal and handling of Dr. Bresalier's Demands, and whether that refusal of the Demands constituted a reasonable and good faith exercise of the Board's business judgment, to respond to any arguments made by defendants in the action styled *Bresalier v. Good, et al.* Civil Action #15-998-LPS . . . and to amend the Complaint therein to the extent necessary or advisable." However, the categories of requested documents are patently overbroad, seek documents and information protected by the attorney-client privilege, and constitute an impermissible end-around Chief Judge Stark's recent denial of plaintiff's application for discovery in *Bresalier v. Good*. The Section 220 Demand lacks any explanation as to why the documents requested are "essential to the accomplishment of the stockholder's articulated purpose." *Sec. First Corp. v. U.S. Die Casting and Dev. Co.*, 687 A.2d 563, 571 (Del. 1997) (requiring the scope of each category of requested documents in a demand under Section 220 to be specified with "rifled precision" and essential to the purported purpose). By way of illustration of the overbreadth of the requests and the failure to seek inspection of documents that are "essential," the Section 220 Demand impermissibly seeks the following categories of documents:

- "Documents sufficient to show the following information relating to any legal services provided directly or indirectly to Duke and/or Progress Energy, Inc. ("Progress"), any members of their respective boards of directors, or any person or entity with which any member of such boards of directors is, was or may have been affiliated, by Gibson, Dunn & Crutcher, LLP ("Gibson Dunn"): (a) the general nature and scope of the legal representation; (c) the time period during which any such legal representation was provided and whether such representations are ongoing; (d) the amount of fees received by Gibson Dunn with respect to any such representation; and (e) the amount of time expended and/ or billed in connection with any such representation" (Request No. 1);

- "Documents sufficient to show any and all communications between the DRC or Gibson Dunn, on the one hand, and any member of representative of any law firm (including, *inter alia,* Sidley Austin, LLP or Morris Nichols Arsht & Tunnell,



June 28, 2016
Page 3

>        LLP) representing Duke and/ or its in-house counsel, relating in any way to Dr. Bresalier's Demands, or the investigation thereof" (Request No. 7);
>
> - "Documents sufficient to identify, by name, job title, and professional affiliation and responsibility, all persons interviewed or questioned by the DRC in connection the investigation summarized in the Demand Refusal Letter" (Request No. 10);
>
> - "All transcripts, memoranda, or other documents that describe or summarize any meetings, interviews, or discussions with any of the persons identified in response to the previous request" (Request No. 11).

As stated above, it is the Company's position that the Section 220 Demand does not state a proper purpose and that Dr. Bresalier is not entitled to any documents. Preserving all objections and reserving all rights, and without conceding in any respect the propriety of the Section 220 Demand, the Company is willing to produce in full satisfaction of the Section 220 Demand: (i) the Report and Recommendation of the Demand Review Committee of the Duke Energy Corporation Board of Directors, (ii) Board resolutions relating to the Demand, (iii) Demand Review Committee minutes, and (iv) Board minutes in which the Demand was discussed, including minutes of the meeting during which the Board made the decision to refuse the Demand. This production would be subject to appropriate confidentiality restrictions and potential redactions for privilege. If you are amenable to this proposal, please review and execute the attached draft confidentiality agreement.

Very truly yours,

*Steven M. Bierman* /EE

Steven M. Bierman

cc: Lisa Z. Brown, Esq. (lbrown@mmwr.com)
Sidney S. Liebsman, Esq. (sliebesman@mmwr.com)
Kenneth J. Nachbar, Esq. (knachbar@mnat.com)
Susan W. Waesco, Esq. (swaesco@mnat.com